**In the Matter of James Earl HOUDA-SHELL and Dorothy Louise Houdashell, Debtors.**

**James Earl HOUDASHELL and Dorothy Louise Houdashell, Plaintiffs,**

v.

**MISSOURI PUBLIC SERVICE COMPANY, Defendant.**

**Bankruptcy No. 80–03380–SW–13.**
**Adversary Action No. 80–0620–SW–13.**

United States Bankruptcy Court, W. D. Missouri, Southwestern Division.

Jan. 6, 1981.

As Corrected Feb. 5, 1981.

James F. B. Daniels, Joplin, Mo., for plaintiffs.

Judith P. Rea, Missouri Public Service Co., Kansas City, Mo., for defendant.

**FINAL JUDGMENT FIXING REASONABLE AMOUNT OF UTILITY DEPOSIT AT $322.68 AND PERMITTING ITS PAYMENT IN INSTALLMENTS AND APPROVING SETOFF OF $80.00**

DENNIS A. STEWART, Bankruptcy Judge.

The debtors have filed a request herein for "modification of security for utility service under 11 U.S.C. section 366, and to recover post-petition setoff." Therein, they complain that, "before providing ... utility service, defendant demanded that the plaintiffs execute an agreement to pay the sum of $325.00 to defendant within 20 days of the commencement of service ... (and that) said deposit is excessive and wholly disproportionate to the risk incurred by defendant in providing such utility service." They further complain that the defendant has claimed and set off "after the filing of the plaintiffs' petition for relief" the sum of $80.00.

---

On November 5, 1980, the day after the complaint was filed, the court issued its order directing the defendant to demonstrate in writing why the court should not deem the sum of $150 to constitute a reasonable deposit under section 366(b) of the Bankruptcy Code, therein making the following observations:

"Because of the distance of the parties from the court and the exigent nature of the relief requested, the court deems it warranted in this action to proceed by means of a show cause order rather than await the filing of an answer and the almost certain necessity for conducting a hearing on the long notice which the distance from the court would require.

"In the ordinary case involving utility service, in prior cases, this court has ordinarily deemed the sum of $150 to be a sufficient security deposit, in the absence of a demonstration that exceptional circumstances warrant a larger or smaller amount. The defendant, therefore, if it is true as plaintiffs allege that it is requiring a significantly larger deposit, should be granted an opportunity to state in writing the facts which warrant a finding that the larger deposit is reasonable within the meaning of section 366(b) of the Bankruptcy Code.

"Further, it is well established that a post-bankruptcy setoff can be exercised only with approval of the court. 'Generally speaking, set-off . . . after bankruptcy proceedings have begun contemplates court action.' 4 Collier on Bankruptcy para. 68.05(2), p. 884 (1978). If the plaintiffs' allegations are true in this respect, therefore, it appears that the defendant should return the $80 to plaintiffs or otherwise grant them effective credit on a security deposit in the same amount. But the defendant should be granted an opportunity to state in writing its factual contentions in this regard."

In responding to the show cause order, the defendant averred that, under the regulations of the Missouri Public Service Commission,

"(a)fter an account is unpaid for 21 days, and thereby becomes delinquent, then the utility may discontinue service, but 'Service shall not be discontinued for nonpayment of a delinquent account within five (5) days after an account becomes delinquent except where written notice is delivered to a customer in which case discontinuance may be effected not less than forty-eight (48) hours after delivery of notice.' . . . (If) a customer receives a bill for October utility service on November 1, (t)hat bill does not become delinquent until November 21, at which time the utility must wait five additional days to disconnect service if the shut-off notice is delivered. This makes disconnection of service possible on either November 27th (the sixth day following mailed notice) or November 24th (the third day following delivered notice). By this time the customer is indebted to the utility for all of October's service plus 24 or 27 days' service received in November, . . . close to two months.

"For this reason 4 CSR 240–13.030(2)(C) and (4)(A) permit a utility to require a deposit from someone with Mr. Houdashell's payment record, equal to two times the highest bill of that customer during the preceding twelve months . . . Mr. Houdashell initiated service on December 4, 1979, at which time he paid an $80 deposit. His first bill as a result of the January 18th meter reading was $126.30. He made a partial payment of $60 on February 15th, leaving an unpaid balance of $66.30. As the following summary shows, Mr. Houdashell has had an unpaid balance with defendant every month since that time, having at no time ever paid his bill in full . . . . For these reasons, defendant requests the Court to allow it to set off the deposit of $80.00 against Mr. Houdashell's unpaid balance of $789.91. Defendant further states that a $150.00 deposit for electric and gas service will not adequately protect defendant and requests the Court to permit it to collect from Mr. Houdashell a deposit which will provide defendant adequate security for the utility service to be ren-

dered, specifically, two times Mr. Houdashell's highest bill during the preceding twelve months, or two times $161.34 (August's bill), which is $322.68."

Therefore, on December 2, 1980, the court issued its order directing the plaintiffs to show cause in writing why their claim should not be denied, stating that "it appears reasonable that the security deposit should be $322.68 and that, accordingly, the deposit of $80 should be set off against that amount."

Plaintiffs' response to that order did not take issue with any of the factual statements made by the defendant, but contended that the court should reach its determination of the reasonableness of the security deposit independently of the state regulations cited by the defendant and that the legislative history behind section 366 might warrant a finding that "no deposit is necessary . . . (i)f an estate is sufficiently liquid (to) guarantee . . . an administrative expense priority (which) may constitute adequate assurance of payment for future services." H.R.Rep.No.95–595, 95th Congress, 2nd Sess. 350 (1978); U.S.Code Cong. & Admin.News 1978, pp. 5787, 6306. The plaintiffs conclude that "if proper effect is to be given to this rehabilitative provision, the Court must determine not what plaintiffs, in the event they had never filed their petition, may have been required to deposit with defendant on the basis of their previous payment performance, but rather what deposit will adequately protect defendant now that much of plaintiffs' regular debt service has abated and a specific sum has been allocated in their monthly budget for payment of utility charges."

■ The court agrees that these principles are paramount and applicable. But it must also be true that the court can consider the past payment record in determining what amount of security deposit constitutes adequate assurance of payment. And when the record of the debtors shows some promise, as it does based upon the facts alleged by the defendant and not contradicted by the plaintiffs, of irregular payment and less than full payment, the court

may consider that a substantial deposit is due. The plaintiffs contend that there has been a significant change in circumstances to alleviate any apprehension which may be caused by the facts which have been admitted; that this change in circumstances is that "a specific sum has been allocated in their monthly budget for payment of utility charges"; and that a security deposit ranging in the area of $300 is therefore unwarranted. But the court must weigh these admirable good intentions against performance in making the determination. When the unpaid balance is great, the record of payment warrants the description of irregular, and the material facts in this regard are not denied by the plaintiffs, although granted an opportunity to do so, the court believes that the $322.68 which would be mandated by the state regulations, at least, is fully reasonable in this case.

■ On the issue of the setoff, the plaintiffs, in their response to that order of December 2, 1980, state that postbankruptcy setoffs "are prohibited under 11 U.S.C. section 362(a)(7) and . . . defendant may *properly* assert whatever claims it has to the deposit under other provisions of the code in a request for dissolution of the stay as provided under section 362(d). Having chosen to execute its set-off with actual knowledge of this proceeding and in defiance of the stay, plaintiffs would ask the court to order defendant to return said setoff, and that any interest which it claims therein be forfeited." Plaintiffs thereby do not deny the claims of the defendant of substantive right to exercise the set-off. Rather, they base a claim of forfeiture on violation of the automatic stay in the postbankruptcy setoff (and violation of the fundamental principles cited by the court). But violation of the automatic stay is ordinarily the subject of civil contempt (or, occasionally, criminal contempt) sanctions which are designed to restore the *status quo* which existed prior to the violation of the judicial order. In this instance, all that needs to be remedied, according to the facts which have been presented to the court, is the absence of any judicial sanction for the

setoff, which may now be granted, when there is no denial of the defendant's substantive right to the $80. If the plaintiffs have suffered any incidental prejudice, harm, or injury by reason of the absence of judicial sanction in the first instance, that might be the subject of a damage award now to be made to remedy fully the violation of the automatic stay and the above legal principles. But the plaintiffs, although granted an ample opportunity to do so, have neither stated nor shown any such prejudice, harm, or injury which may be remediable in damages.

Therefore, for the foregoing reasons, justice and equity require that the security deposit be fixed at $322.68; that the deposit may be paid in installments, but $200 thereof must be paid within 20 days of the date of entry of this order and the remaining $122.68 within 30 days thereafter; and that the $80 setoff exercised by the defendant now receive judicial approval.

Nor can the plaintiffs complain respecting the timing of the payment of the security deposit. The statute contemplates payment "as soon as practicable, not to exceed 30 days." See Legislative History to Section 366 of the Bankruptcy Code. Because of the distance between the court and the plaintiffs, longer than that has already transpired since the inception of this adversary action. And, further, in her letter of December 31, 1980, to the court, counsel for the defendant states that:

> "Plaintiffs may have budgeted specific sums for payment of their utility charges, but as of 4:30 p. m. today, they have paid nothing to MoPub. Plaintiffs requested that MoPub turn on their gas and electricity on October 16, 1980. At that time MoPub requested a deposit, which is still not resolved with the court. Since that date plaintiffs have received utility service, but have paid nothing. Their first bill was for the period 10/16–11/13, in the amount of $58.14. This bill is now delinquent. The bill for the period of 11/14–12/17, in the amount of $87.19, has been mailed to them, but is not yet delinquent."

This describes a situation which the court cannot long tolerate. The postpetition payments must quickly be brought up to date as a precondition of the court's permitting the plan of reorganization to continue. If they are not updated within 30 days, the court will consider dismissing the proceedings upon the written motion of the defendant.

Accordingly, it is hereby

ORDERED AND ADJUDGED that the security deposit under section 366 of the Code is hereby established as $322.68, $200 of which is payable to the defendant within 20 days of the date of entry of this order and $122.68 thereof is payable within 30 days thereafter. It is further

ORDERED AND ADJUDGED that the $80 postpetition setoff exercised by the defendant be, and it is hereby, approved by the court.