**In re FULGHUM CONSTRUCTION CORPORATION, Debtor.**

**Robert H. WALDSCHMIDT, Trustee, Plaintiff,**

v.

**COLUMBIA GULF TRANSMISSION COMPANY, Defendant.**

Bankruptcy No. 380–00235.
Adv. No. 380–0431.

United States Bankruptcy Court,
M. D. Tennessee,
Nashville Division.

Sept. 16, 1982.

Robert H. Waldschmidt, Cosner, Waldschmidt & Crocker, Nashville, Tenn., for trustee.

Harlan Dodson, III, Dodson, Harris, Robinson & Aden, Nashville, Tenn., for Columbia Gulf Transmission.

## MEMORANDUM [1]

KEITH M. LUNDIN, Bankruptcy Judge.

The issue presented is whether Columbia Gulf Transmission Company is entitled to set off amounts paid by it to the debtor's

1. This memorandum constitutes findings of fact and conclusions of law pursuant to Rule 752, Fed.R.Bankr.P.

subcontractors and vendors against amounts owed to the debtor pursuant to two contracts with the debtor.[2] For the reasons stated below, the court holds Columbia is entitled to setoff.

In 1979, Fulghum Construction Corporation ("Fulghum" or "debtor") entered into two contracts to perform work for Columbia Gulf Transmission Company ("Columbia"). Contract C–440 was for pipeline construction in Tennessee and Mississippi; contract C–447 was for work in Louisiana. The contracts allowed Fulghum, with certain restrictions, to contract for labor, supplies and subcontractors at its own expense. All physical work described in the contracts was completed in December, 1979.[3] Pursuant to the contracts, Columbia retained money due Fulghum pending performance of the conditions in the contracts.[4] It was stipulated that the total unpaid retainage under contracts C–440 and C–447 was $223,305.07.

Mr. Ron Upchurch, Columbia's engineer in charge of the two Fulghum projects, testified that he designed the projects, drew up invitations to bid and supervised construction and close-out[5] of each project. He developed an estimate of project costs including right-of-way acquisition, subcontracts, labor and material requirements.

In December of 1979, Mr. Upchurch began receiving telephone calls from various suppliers, vendors, and subcontractors of Fulghum regarding Fulghum's nonpayment of invoices. Mr. Upchurch verified Fulghum's nonpayment of invoices through telephone conversations with Mr. Gray, Fulghum's secretary/treasurer and accountant. Mr. Gray confirmed in late December, 1979 and early January, 1980 that Fulghum had not paid a significant number of its suppliers and subcontractors on the two projects. By letter to Fulghum dated January 11, 1980, Mr. Upchurch indicated that because of Fulghum's failure to pay invoices, payment would be stopped on a check previously issued to Fulghum in the amount of $2,652.60. Fulghum did not protest. Fulghum has never furnished an affidavit or other evidence that all claims for labor, equipment, materials, and supplies were paid for either contract C–440 or contract C–447.[6]

**2.** Had this case developed normally, the issues presented would have included the existence of a debt between Fulghum and Columbia, Columbia's right of recoupment, and the validity of a counterclaim by Columbia under the terms of the contract. [*See* 4 L. King, Collier on Bankruptcy ¶ 553.03 (15th ed. 1982).] However, by prior orders, certain facts were ordered admitted against the defendant as sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure. Because of the matters admitted against Columbia, these other theories were not at issue at trial. At the pretrial conference the issue was stated in terms of setoff under 11 U.S.C.A. §§ 542(b) and 553 and the proof was presented on that basis. A contractor's or landowner's rights against retainage under a construction contract have been discussed by other courts in terms of setoff or counterclaim. *See, e.g., United States v. Munsey Trust Co.,* 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1946); *Gratiot v. The United States,* 40 U.S. (15 Pet.) 336, 10 L.Ed. 759 (1841); *United States v. Federal Insurance Co.,* 483 F.2d 153 (5th Cir. 1973); *Williamson Shaft and Slope Co. v. Island Creek Coal Co.,* 20 B.R. 73 (Bkrtcy.S.D.Ohio 1982).

**3.** Columbia makes no claim for incomplete or improper work. It was stipulated that all req-

uisite landowner clearances and releases and government regulatory approvals were obtained.

**4.** The amounts retained were intended by the terms of the contracts as partial protection for Columbia in the event Fulghum failed to pay its suppliers and subcontractors. There is no proof in this case that the retainage was segregated from the general operating accounts of Columbia. The contracts do not so require. Fulghum's cause of action against Columbia is clearly property of the debtor's estate. 11 U.S.C.A. § 541 (West 1979). No party has objected to the bankruptcy court's jurisdiction to hear this case. *But see Fiberglass Specialty Co., Inc. v. Bor-Son Construction, Inc.,* 678 F.2d 78 (8th Cir. 1982) (holding that retainage is not property of the estate and only a court of "general jurisdiction" can entertain a debtor/contractor's action for retainage).

**5.** "Close-out" refers to acquiring and reviewing contracts and affidavits of subcontractors and suppliers to determine the appropriateness and reasonableness of the charges.

**6.** Such an affidavit is required in each contract between Fulghum and Columbia.

The telephone calls to Columbia from Fulghum's suppliers and subcontractors continued and in early February, 1980, Columbia sent a letter to various suppliers and subcontractors requesting that they send directly to Columbia copies of unpaid invoices [7] showing the amounts owed by Fulghum for work done on Columbia's projects. The invoices were sent to Columbia and Mr. Upchurch examined each to determine whether the amounts requested were appropriate for the work done and whether the work, material, and equipment shown on the invoices were used on the Fulghum projects. Based upon examination of the invoices, conversations with Mr. Gray, knowledge of the projects and experience in similar projects, Mr. Upchurch determined money was owed by Fulghum and that the amounts claimed by the subcontractors and vendors were appropriate. Mr. Upchurch also found that liens had been filed by some of Fulghum's subcontractors and vendors against Columbia's property in an effort to collect debts owed by Fulghum [8].

In February of 1980, Columbia learned that Fulghum had filed bankruptcy in January of 1980.[9] Columbia reviewed Fulghum's schedules of debts filed with its bankruptcy petition and ascertained that the amounts due unpaid subcontractors and vendors were substantially corroborated by Fulghum's records.[10]

It was stipulated that in May, 1980, Columbia made the following payments to Fulghum's subcontractors and vendors:

| | |
|---|---|
| Taylor Machinery Company | $ 43,422.50 |
| Alice's Ice Service | 1,158.75 |
| Gayle Oil Company | 8,494.57 |
| Linscomb Construction Company | 3,100.00 |
| Sarver Dirt Hauling | 5,147.52 |
| Cagnina Lumber Company | 1,808.16 |
| Henry's Mower Sales | 549.41 |
| Double "L" Hydro-Test, Inc. | 42,529.22 |
| Burchett Trucking Company, Inc. | 42,439.59 |
| Porter Walker, Inc. | 582.37 |
| Leland Equipment Company | 2,650.00 |
| Bayou Pipe Coating Company | 2,501.74 |
| Commercial Resins | 10,772.00 |
| Midcon Pipeline Equipment Company | 34,624.09 |
| Cross Country of Texas | 16,205.32 |
| Acme Truck Line, Inc. | 4,952.08 |
| Evans Pipeline Equipment Company | 11,365.28 |
| Volunteer Welding Supply, Inc. | 6,382.01 |
| Pipeline Products and Services, Inc. | 1,705.60 |
| CRC Supply and CRC Pipeline Equipment | 23,457.60 |
| TOTAL | $263,847.81 |

7. The invoices received by Columbia were admitted into evidence for the limited purpose of showing they were received and relied upon by Mr. Upchurch in his investigation of whether Fulghum was paying its bills promptly and satisfactorily. The invoices were not admitted to prove the truth of matters therein asserted.

8. It was stipulated that the following entities filed liens against some or all of the property upon which the contracts were performed: Taylor Machinery Company, Alice's Ice Service, Linscomb Construction, Inc., Sarver Dirt Hauling, Cagnina Lumber Company, Gayle Oil Company.

9. In February of 1980, Columbia had several options. Fulghum had failed to pay for materials and labor incorporated into Columbia's projects. The suppliers and subcontractors could not sue Fulghum [See 11 U.S.C.A. § 362 (West 1979)] but could and were filing liens against and seeking payment directly from Columbia. If Columbia paid the retainage to the trustee, Columbia might have to pay twice as various subcontractors and suppliers of Fulghum pressed their claims against Columbia. If Columbia paid the retainage to the suppliers and subcontractors, it took the risk of violating the automatic stay and of eventually being ordered by the bankruptcy court to pay a second time. In either case, Columbia's claim against Fulghum for breach of contract would not likely produce a dividend for Columbia equal to the amounts it would pay the trustee or Fulghum's suppliers and subcontractors.

Faced with this dilemma in February of 1980, Columbia should have sought relief from the bankruptcy court to apply the retainage to the payment of Fulghum's subcontractors and suppliers. The setoff question would then have been addressed while the evidence was fresh, before the payments to Fulghum's suppliers and subcontractors, and the now-twisted posture of this case could have been avoided.

10. Schedules filed by the debtor listed debts to the subcontractors and vendors in amounts which coincide to a substantial extent with the invoices received by Columbia. Sixty percent of the amounts listed were exactly the amounts shown on the petition; 100% of the listed subcontractors and vendors appeared as creditors on the schedules; only two invoices were substantially different from amounts listed on the schedules. The trustee presented no proof that the amounts claimed in these two invoices were improper or excessive.

At trial Columbia withdrew any claim to offset the $1,705.60 paid to Pipeline Products and Services, Inc. as Mr. Upchurch's testimony revealed that this payment was not in connection with either of the contracts here at issue. Accordingly, the total paid by Columbia to Fulghum's subcontractors and suppliers pursuant to contract C–440 and contract C–447 was $262,142.21.[11] It was also stipulated that no other claims remain unpaid on either contract.

By letter dated May 29, 1980, Columbia's attorney notified Fulghum's trustee that payment to Fulghum's subcontractors and vendors had been made. A list detailing the amounts paid and to whom was attached to the letter. Fulghum again did not protest—Columbia never received any indication from the trustee or from Fulghum that the specific payments were in the wrong amount or to the wrong entities. At trial the trustee for Fulghum presented no proof challenging the propriety of the amounts claimed by or paid to Fulghum's subcontractors and suppliers.

■ The trustee's complaint herein is styled as an action to recover an account receivable from Columbia under § 542 of the Bankruptcy Code, 11 U.S.C.A. § 542 (West 1979). With exceptions not here pertinent, § 542(a) requires anyone holding property of the estate on the date of the filing of a bankruptcy petition to deliver that property to the trustee. Section 542(b) requires a creditor who owes a debt that is property of the estate, to pay such debt to the trustee "except to the extent that such debt may be offset under § 553 of this title against a claim against the debtor." The burden of proof is on the creditor to prove entitlement to setoff under § 553.[12] *Third National Bank v. Carpenter,* 14 B.R. 405, 408 (Bkrtcy.M.D.Tenn.1981). The elements necessary to prove setoff under § 553 are:

1. a debt owed by the creditor to the debtor which arose prior to the commencement of the bankruptcy case;

2. a claim of the creditor against the debtor which arose prior to commencement of the bankruptcy case; and

3. the debt and claim must be mutual obligations.

The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C.A. § 101(11) (West 1979). *See, e.g., Brendern Enterprises, Inc. v. Micro-Acoustics Corp.,* 12 B.R. 458, 459 (Bkrtcy.E.D.Pa.1981) (no debt is owed by a creditor holding property of the debtor as bailee or trustee without color of lien). "It has been long the rule that the right of setoff exists if the debt is absolutely owing at the time of the petition even though not due or liquidated." *Lawrence v. Commissioner of Internal Revenue Service,* 19 B.R. 627, 629 (Bkrtcy.E.D.Ark. 1981) (debtor's unliquidated tax liability for the 1979 tax year was "marginably owing" to the government at the time of the filing of the debtor's petition). As a matter preliminary to trial, the court determined the existence of a debt owed Fulghum by Columbia. The court's holding was based upon the admissions ordered against the defendant, the parties' stipulation that all physical work on the two projects was ultimately completed and the stipulation that Columbia makes no claim for incomplete or improper work.

■ Section 101(4)(b) defines "claim" as the "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, ma-

---

**11.** The parties' stipulation to the total paid by Columbia appears mathematically incorrect. The amount stipulated was $262,039.65.

**12.** 11 U.S.C.A. § 553 (West 1979) reads in pertinent part as follows:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by

such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title; . . .

tured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C.A. § 101(4)(b) (West 1979). Columbia had a claim against Fulghum at the time of Fulghum's petition in bankruptcy.[13] It is undisputed that the contracts required Fulghum to:

1. prevent the placing of liens or other encumbrances upon Columbia's property as a result of the claim against Fulghum;

2. furnish Columbia with evidence that all bills for labor, equipment, materials and all claims against Fulghum have been paid or settled; and

3. quickly and promptly pay all claims against it with regard to these projects.

Fulghum stipulated that it failed to comply with the first and second requirements listed above. It was established by the unrebutted testimony of Mr. Upchurch that during December of 1979, Fulghum was not paying its subcontractors and vendors promptly or satisfactorily. Article XII of both contracts provided that in the event a lien is placed upon Columbia's property as a result of a claim against Fulghum and is not removed, Columbia may pay the claim and remove the lien, and Fulghum will be liable to Columbia for all such expenses, including legal fees. Columbia thus had a pre-petition claim against Fulghum for Fulghum's failure to pay subcontractors and suppliers, for the removal of liens against Columbia's property and for breach of contract.[14]

Mutuality of obligations means that the obligations must be between the same parties, *Hill v. FHA,* 19 B.R. 375, 380 (Bkrtcy.N.D.Tex.1982); *Virginia Block Co. v. Virginia Mutual Insurance Agency, Inc.,* 16 B.R. 771, 774–5 (Bkrtcy.W.D.Va.1982), and must be "owing to and due in the same rights and capacities." *Virginia Block Co. v. Virginia Mutual Insurance Agency, Inc., supra, citing Nairn v. J. A. Acosta & Co. (In re Rosenbaum Grain Corp.),* 103 F.2d 656, 659 (7th Cir. 1939); *Citizens Bank v. Tolan,* Bk. No. 380–01052, Adv. No. 380–0408 (Bankr.M.D.Tenn. Nov. 4, 1980). Mutuality is present in this case. The debt and claim are between Fulghum and Columbia. Both arose and existed before the petition in bankruptcy. The parties stipulated that the physical work was completed by December, 1979. Thus, Columbia's debt to Fulghum arose prior to commencement of this bankruptcy case on January 25, 1980. Based on the testimony of Mr. Upchurch and Mr. Gray, the court concludes that Fulghum's creditors were unpaid at the time of its filing in bankruptcy. Fulghum had permitted liens to exist against Columbia's property at the time of the petition. The obligations are mutual as between the parties.

The court rejects the trustee's assertion that Columbia's failure to file proofs of claim against Fulghum's estate precludes any setoff by Columbia. Section 553(a)(1) provides that a creditor otherwise entitled to setoff under § 553(a) may not set off its claim against the debtor to the extent its claim "is disallowed other than under § 502(b)(3) of this title." Section 553 does

---

**13.** The trustee asserts that Columbia did not have a pre-petition claim against Fulghum because Columbia had not yet complied with certain contract provisions concerning the settlement of unpaid claims by Fulghum's subcontractors. This argument may be relevant to determining the proper amount of Columbia's claim against Fulghum but the existence of Columbia's claim does not depend on final settlement pursuant to the contract. 11 U.S.C.A. § 101(4)(b) (West 1979) includes within the definition of "claim" the right to an equitable remedy though it be disputed, contingent or unmatured. Columbia's letter of May 29, 1980 provided the trustee and/or Fulghum with an

opportunity to contest the validity and amounts of the claims. The trustee also could have contested the validity of the payments by Columbia at trial on June 16, 1982. The trustee put on no proof whatsoever.

**14.** This is not a subrogation case. Columbia is not seeking to assert the rights of Fulghum's subcontractors and vendors by way of subrogation to their claims against Fulghum. Rather Columbia's claims against Fulghum arise directly between the parties from the pre-petition breach of the contracts by Fulghum. *See* 4 L. King, Collier on Bankruptcy ¶ 553.04[6] (15th ed. 1982).

not contain a requirement that a creditor seeking to exercise a setoff must first file a proof of claim. Neither is such a prerequisite contained in § 542—the section under which the trustee proceeds in this case. The process of disallowing a claim is controlled by 11 U.S.C.A. § 502 (West 1979). Disallowance is initiated by the filing of an objection by a "party in interest." No objection to Columbia's claim has been filed in this case. To the extent that § 502 contemplates the filing of a proof of claim before a party files an objection, § 501 provides that the debtor or the trustee may file a proof of claim on behalf of a creditor who has not itself timely filed. 11 U.S.C.A. § 501(c) (West 1979).[15] The trustee in this case has initiated no procedure to attack Columbia's claim. Columbia's claim has not been disallowed. Section 553(a)(1) is thus not a bar to setoff by Columbia.

■ Finally the court declines the trustee's suggestion that the automatic stay[16] precludes post-petition setoff and, therefore, Columbia's setoff under § 553 is invalid. The trustee brought this action to collect an account receivable under § 542(a) and Columbia is asserting its right under § 542(b) to deduct the amount it may setoff under § 553. As noted by this court in *Third National Bank v. Carpenter,* 14 B.R. 405, 408 (Bkrtcy.M.D.Tenn.1981), § 542(b) refers to claims which "may be offset" under § 553 and that such language "clearly contemplates that the setoff right has not been exercised." Contrary to the trustee's contentions, the filing of the bankruptcy petition does not cut off a creditor's right to setoff under § 553 but instead *stays* the creditor's exercise of that right. *Terry v. Gordon's Jewelry Co. of Va., Inc.,* 7 B.R. 880, 882 (Bkrtcy.E.D.Va.1980). The legislative history of § 362(a)(7) states "Paragraph (7) stays setoffs of mutual debts and

credits between the debtor and creditors. As with all other paragraphs of subsection (a), this paragraph does not affect the right of creditors. It simply stays its enforcement pending an orderly examination of the debtor's and creditor's rights." H.R. Rep. No. 595, 95th Cong., 1st Sess. 340–342 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 49–51 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5837, 6298. Thus, a creditor who attempts to setoff mutual debts post petition may be in violation of the automatic stay and potentially subject to a contempt citation, but the right of setoff is not lost. *Houdashell v. Missouri Public Service Co.,* 7 B.R. 901, 903–904 (Bkrtcy.W.D.Mo.1981). In *Houdashell,* the debtor did not deny the creditor's entitlement to setoff but rather asserted that the creditor forfeited the setoff by violating the automatic stay. The court stated:

> [V]iolation of the automatic stay is ordinarily the subject of civil contempt (or, occasionally, criminal contempt) sanctions which are designed to return *status quo* which existed prior to the violation of the judicial order. In this instance all that needs to be remedies, according to the facts which have been presented to the Court, is the absence of any judicial sanction for the setoff, which may now be granted, when there is no denial of the defendant's substantive right to the $80 [setoff amount]. If the plaintiffs have suffered any incidental prejudice, harm, or injury by reasons of the absence of the judicial sanction in the first instance, that may be the subject of a damage award now to be made to remedy fully the violation of the automatic stay and the above-legal principles. But the plaintiffs, although granted an ample opportunity to do so, have neither stated nor shown any

---

**15.** 11 U.S.C.A. § 1111(a) (West 1979) tells us that in chapter 11 cases a proof of claim is deemed filed under § 501 if the claim appears in the debtor's schedules and is not disputed, contingent or unliquidated. For no apparent reason Columbia is not scheduled as a claimant in Fulghum's schedules. As discussed *supra,* Columbia unquestionably held a claim against Fulghum on the date of Fulghum's petition.

**16.** Section 362(a)(7) provides that commencement of a bankruptcy case stays "the setoff of any debt owing to the debtor that arose before the commencement of a case under this title against any claim against the debtor." 11 U.S.C.A. § 362(a)(7) (West 1979).

such prejudice, harm, or injury which may be remedied in damages.

Therefore, for the foregoing reasons, justice and equity require ... the $80 setoff exercised by the defendant now receive judicial approval.

The complaint herein was filed some 19 days after the trustee was notified by Columbia's attorney that Columbia had made payments to Fulghum's subcontractors and vendors. In response to the suit, Columbia has properly asked the court to sanction its right of setoff. If the trustee felt that the payments to Fulghum's subcontractors and vendors violated the automatic stay, the appropriate action would have been a complaint for contempt not an action to recover a receivable. The trustee has not proven in this case that Columbia violated the § 362 stay when it made post-petition payments to Fulghum's subcontractors and vendors. If the court determined that Columbia's payments to subcontractors and vendors were in technical violation of the stay, the trustee did not present any evidence of damages, harm, or prejudice. Quite the contrary, the payments made by Columbia to Fulghum's subcontractors and vendors minimized the damages caused by Fulghum's breach of its contracts and have benefited the estate by reducing the claims against Fulghum.

Accordingly, the court finds that the defendant has carried its burden of proving its entitlement to setoff. The only proof before the court demonstrates conclusively that the amount of setoff to which Columbia is entitled exceeds the debt owed to Fulghum under the contracts here at issue.[17] An appropriate order will be entered denying the relief sought by the trustee.

---

17. As indicated above, Columbia's debt to Fulghum is in the maximum amount of $223,305.07. Columbia's claim against Fulghum for payments to subcontractors and vendors and for the removal of liens is $262,142.21.