In re Almer F. PEABODY, Sarah L. Peabody, Debtors.

Gary J. NORTON, Trustee, Plaintiff,

v.

ASSOCIATED GROCERS OF MAINE, INC., Defendant.

No. 182–00263.
Adv. No. 183–0002.

United States Bankruptcy Court, D. Maine.

July 17, 1985.

Gary J. Norton, Anderson, Merrill, Norton & Relyea, Bangor, Me., for plaintiff.

Donald H. Marden, Waterville, Me., for defendant.

FREDERICK A. JOHNSON, Bankruptcy Judge.

## MEMORANDUM DECISION

The trustee seeks, under 11 U.S.C. § 542, to recover money deposited by debtors into a capital savings account held by Associated Grocers of Maine, Inc. (Associated). Associated argues that it is a secured creditor with a right to set-off. The court concludes that Associated is correct.

The underlying facts have been stipulated and the issues fully briefed. On May 19, 1980 Almer and Sarah Peabody, d/b/a Brown's Grocery, executed an Application for Membership in Associated which was approved on June 3, 1980. That application recites applicants' agreement to establish a capital savings account (the account) equalling three times applicants' average weekly purchases. Until that time, a one percent (1%) surcharge on total weekly purchases was to be placed in applicants' account. Once the purchase amount had been achieved, applicants were to receive

interest at a rate to be set by the Board of Directors. Applicants further agreed to pre-pay all orders from Associated until the account had accrued one week's average billing. Associated is governed by by-Laws passed in June of 1980 and revised as of July 1983. In both versions, the by-Laws state that the purpose of the surcharge is to act as "a continuing pledge to the Corporation to secure any indebtedness..." The by-Laws also create a right in favor of Associated to set-off against monies in that account. Pursuant to both the Application for Membership as well as the by-Laws, the Peabodys made required payments to the account. On August 16, 1982, the Peabodys filed for Chapter 7 relief. On September 3, 1982, Associated, without leave of court, exercised its right of set-off against the $12,785.87 in the account on a balance due of $40,434.05. On September 9, 1982, Associated filed a proof of claim for $40,434.05 claiming secured status by virtue of the pledge set forth in the by-Laws.

The trustee argues that Associated's interest in the account is unsecured because it did not have possession pursuant to a signed security agreement sufficient to satisfy 11 M.R.S.A. § 9–203(1)(a); that Associated's unsecured status did not justify its exercising its right to set-off post-petition, and that the set-off was a violation of 11 U.S.C. § 362(a)(7). The trustee asserts that the property is, therefore, section 541 property of the estate and subject to a section 542 turnover order. Associated maintains it is secured in the amount of $12,785.57 plus interest from the date of the Order of Relief by virtue of the aforementioned pledge, compliance with same being an implicit condition of membership in the corporation. Further, Associated maintains the by-Laws as well as the mutu-

ality of debt between the parties govern their right to set-off.

■ We begin with the threshold question of whether or not Associated is a secured creditor. Me.Rev.Stat.Ann. tit. 11 § 9–304(1) provides in pertinent part: "A security interest in money ... can be perfected only by the secured party's taking possession ..." Possession of such collateral must be pursuant to an agreement in order for the security interest to be enforceable. Me.Rev.Stat.Ann. tit. 11 § 9–203(1)(a). An agreement for pledge purposes has been defined as an express agreement to vest possession in the pledgee (lender) during the term of the obligation. Squillante, "The Pledge As A Security Device, Part II", Comm.L.J. (Jan. 1983). It is uncontroverted that Associated had possession of the capital savings account pursuant to the agreement contained in the Application for Membership. The clear intent of the parties in setting up the account was to secure Associated's extension of credit. Such an intent is evidenced both by the language in the application regarding pre-payment until adequate monies accrue in the account and by Article XII of the by-Laws.[1] Associated, therefore, is a secured creditor to the extent of the $12,785.87 in the account as of the date of filing.

The second issue concerns the validity of Associated's post-petition exercise of its right to set-off. While trustee concedes that Associated might have a right to set-off under section 553 of the Code if it were found to be a secured creditor, he insists that Associated's post-petition exercise of that right to satisfy pre-petition debt violates 11 U.S.C. § 362(a)(7)[2] and must now be redressed by a turn-over order.

It is stipulated that the Application for Membership and the accompanying corpo-

---

1. Article XII states, in part:

   The purpose of this bylaw is to assure the equitable contribution of needed working capital for the corporation's business operations, and to provide security for the credit extended to stockholders in the sale of goods.

2. 11 U.S.C. § 362(a)(7) provides, as pertinent:

   (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay applicable to all entities, of—
   (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor;

rate by-Laws represent the legal relationship between the parties with regard to the account. Article XII of the by-Laws states, in pertinent part:

When any stockholder sells his stock or otherwise ceases to be eligible for membership in the corporation, he shall be entitled to be paid the balance in his capital savings account plus accumulated interest, upon demand, except that any indebtedness due the corporation from him shall be set off against said account, and the balance only, if any, paid him.

There is evidence to show Associated's claims for payment exceed debtors' claims to the account. It is clear, therefore, that Associated would have had a post-petition right to set-off with proper leave of court.

■ The automatic stay does not cut off valid section 553 rights of creditors but merely stays their enforcement pending a court's examination of the parties' rights, *Robert H. Waldschmidt v. Columbia Gulf Transmission Co., (In re Fulghum Construction Corporation),* 23 B.R. 147, 153–154, 7 CBC2d 155 (Bankr.M.D.Tenn.,1982) quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 340–342 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 49–51 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5837, 6298. *See also John McLemore v. Citizens Bank of Cookeville (In re Tom McCormick Enterprises, Inc.),* 26 B.R. 437, 7 CBC2d 1293 (Bankr.M.D.Tenn.1983). While plaintiff trustee may be entitled to the remedies of sanctions and damages for violating the stay, a denial of Associated's substantive right to the $12,785.87 setoff amount is not a proper remedy. *Bridgeport Company, Inc. v. United States Postal Service,* 39 B.R. 118, 128 (Bankr.E.D. Ark.W.D.1984), *Houdashell v. Missouri Public Service Co.,* 7 B.R. 901, 903–904 (Bankr.W.D.Mo.1982). Plaintiff has not asked for an appropriate remedy nor alleged any injury or harm to the estate because of the technical violation of the stay. Since ample proof before this court evidences that Associated is owed far more than the setoff amount it held as collateral, it would appear that the setoff's only effect on the estate is to reduce a claim against the debtors. Judicial economy and equity dictate, then, that the court now approve the setoff exercised by Associated. Trustee's turnover complaint will be denied.

An appropriate order will be entered.