**In re Catherine Melvina COLE, Debtor.**

**Bankruptcy No. 88–4–1641–SD.**

United States Bankruptcy Court,
D. Maryland,
at Rockville.

Aug. 31, 1989.

Debra Gardner, Legal Aid Bureau, Inc., Frederick, Md., for debtor.

Marleen L. Brooks, Potomac Edison Co., Hagerstown, Md., for Potomac Edison Co.

## MEMORANDUM OF DECISION AS TO OFFSET OF UTILITY DEPOSIT

E. STEPHEN DERBY, Bankruptcy Judge.

The issues in this matter involve how to apply a consumer debtor's unapplied, prepetition utility deposit which has been claimed as exempt. This is a no asset Chapter 7 case. Among the property items which Debtor claimed as exempt was a deposit with Potomac Edison Company in the amount of $175.98, including interest thereon. This exemption item was added by an amendment of schedules, which Debtor filed shortly after the Section 341 (11 U.S.C.) meeting of creditors. The total of exemptions claimed by Debtor was $2,975.98, which was about one half the total dollar value of discretionary exemptions for cash and property allowed a debtor under Maryland law. Md. Cts. & Jud. Proc.Code Ann. § 11–504 (1984 Repl.Vol., 1988 Cum.Supp.). Debtor owed Potomac Edison approximately $1,700.00 prepetition.

Potomac Edison has requested Debtor to provide, pursuant to 11 U.S.C. § 366(b), a deposit of $265.00 as adequate assurance of payment to continue Debtor's electrical service postpetition. This amount represents Debtor's average billings for two months, and the Court finds that it is a reasonable amount to provide adequate assurance under the circumstances.

Debtor has asked this Court to direct Potomac Edison to apply the prepetition deposit, which she has claimed as exempt, to her postpetition deposit obligation. If the prepetition deposit was applied as requested by Debtor, Debtor would only be required to pay $89.02 as a postpetition deposit for adequate assurance of payment. Potomac Edison refuses, and asks by way of defense for relief from stay to set off and apply the prepetition deposit against its unpaid prepetition utility bill. If Potomac Edison is permitted to apply the prepetition utility deposit, Debtor must pay the entire $265.00 deposit in new funds.

Debtor did not sign any agreement with Potomac Edison as to the purpose of the prepetition utility deposit. However, there are regulations of Maryland's Public Service Commission which govern residential customer deposits. *See* COMAR 20.30.02 (1988). The regulations declare it is in the public interest, under certain circumstances, for deposits to be made to relieve the

burden of uncollectible bills. COMAR 20.-30.02.01(B) provides:

B. The Commission further declares that when it is necessary for an applicant or customer to make a cash deposit to establish or reestablish credit in accord with these regulations, the making of the deposit is in the public interest, because it avoids, to the extent practicable, the creation of a burden arising from uncollectible bills which would have to be borne ultimately by all the utility's ratepayers.

The regulations specifically provide that a utility may require each applicant for residential service to establish credit in compliance with one of several specified methods and procedures. COMAR 20.30.-02.02(A). If a residential customer is unable to establish credit by other methods, "... a utility may require the applicant to establish credit by making a cash deposit to secure payment of a final bill for service under Regulation .04." COMAR 20.30.02.-02(B)(4). Regulation .04, *inter alia*, limits deposits to two months where billing is monthly, and it requires a utility to pay interest on deposits held more than 90 days. COMAR 20.30.02.04. Further, with respect to the re-establishment of credit, Debtor has referred the Court to COMAR 20.30.02.03(B) which provides:

B. A residential customer who has established credit and is receiving service, but who fails to pay a bill by the expiration date of a termination of service notice, may be required by the utility to re-establish credit by depositing the amount prescribed in Regulation .04 in addition to paying the outstanding bill and a reasonable reconnection charge, provided that any prior deposit paid by the customer has been refunded.

Debtor argues that her discharge in bankruptcy negates the requirement that she pay the outstanding prepetition claims. However, she contends the proviso that any prior deposit paid by her be refunded as a condition of posting a new deposit remains intact by virtue of Debtor's claiming the deposit as exempt.

Potomac Edison, on the other hand, argues that the prior deposit secures the prepetition obligation of Debtor for utility service. Potomac Edison refers to COMAR 20.30.02.04–1 which provides:

*.04–1 Use of Deposit.*

A utility may apply a residential customer deposit plus accrued interest, first against any unpaid balance due the utility for that service as determined by the final bill issued to the customer, and then against any unpaid balance due the utility on any other residential account of that customer.

Maryland law thus gives Potomac Edison the right to apply Debtor's residential customer deposit against the unpaid balance owed by Debtor for utility service, "...as determined by the final bill issued to the customer,...." *Id.* Section 553(a) of the Bankruptcy Code (11 U.S.C.) provides that the Code, subject to certain limited exceptions, does not affect a right of a creditor to offset mutual, prepetition debts. Before it can effect a setoff, however, Potomac Edison is required to obtain from the Court relief from the automatic stay of 11 U.S.C. § 362(a)(7) pursuant to 11 U.S.C. § 362(d). 11 U.S.C. § 553(a).

The right of setoff claimed by Potomac Edison is established by regulation, and not by Debtor's express consent. The amount which may be set off is to be determined by a final bill, which was not issued here because Debtor filed her intervening bankruptcy case and because Debtor's electrical service was not terminated.

Potomac Edison was prohibited from terminating utility service by 11 U.S.C. § 366(a), unless Debtor failed to furnish "... adequate assurance of payment, in the form of a deposit or other security, ..." for postpetition service. 11 U.S.C. § 366(b). Debtor asserts she has complied with the deposit requirement by using her prepetition deposit which she has exempted.

The question posed is thus whether Debtor's timely claimed and unchallenged exemption of the utility deposit defeats a right of setoff which Potomac Edison would otherwise have against Debtor's un-

paid bills. This apparent conflict of two independent rights recognized under the Bankruptcy Code is resolved by turning to Maryland law.

Section 522(b)(1) of the Bankruptcy Code expressly allows a State to opt out of the federal bankruptcy exemptions, and thus to make State law exemptions applicable in all cases. Maryland has exercised this opt-out option. *See* Md. Cts. & Jud. Proc.Code Ann. § 11–504(d) (1984 Repl.Vol.).

The purpose of exemptions is to protect certain property of a debtor from involuntary seizure so that a debtor and his family are not deprived of the means to survive. The purpose for exemptions from creditor execution was colorfully articulated by the Maryland Court of Appeals in the case of *In re Taylor*, 312 Md. 58, 59–60, 537 A.2d 1179, 1180 (1988), as follows:

> The democratic system of government under which we live is founded upon the concept that the individual is endowed "with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness." The Declaration of Independence para. 2 (U.S.1776). A tenet of this concept is that a person should not be imprisoned for debt. Md. Const., Art. III, § 38. A corollary of this tenet is that the debtor should not be stripped bare of his belongings and property so as to be rendered a pauper. A principle of the corollary is that a person shall not be deprived of a fair opportunity to make an honest living so as not to be precluded from casting off the economic shackles with which his debts have bound him. Therefore, he should not be completely divested of the tools of his trade or profession.
>
> The People of the State of Maryland have recognized this philosophy. Infused in the organic law of this State is the command:
>
>> Laws shall be passed by the General Assembly, to protect from execution a reasonable amount of the property of the debtor. [Md. Const., Art. III, § 44.]
>
> In compliance with this commandment, the General Assembly has declared [cer-

tain property] to be "exempt from execution on a judgment"....

To be balanced against a debtor's right to exempt property under Maryland law is a creditor's right of setoff recognized in certain circumstances under 11 U.S.C. § 553. The Bankruptcy Code is not an independent source of the right of setoff. It preserves common law setoff rights under applicable nonbankruptcy law. *See In re Pieri*, 86 B.R. 208, 210 (9th Cir. BAP 1988); *In re McLean Industries, Inc.*, 90 B.R. 614, 618 (Bankr.S.D.N.Y.1988); *In re Haffner*, 12 B.R. 371, 373 (Bankr.M.D. Tenn.1981). Maryland law controls here.

This Court is not aware of a reported Maryland case which holds that the right of setoff may not be exercised against exempted property. However, such a result appears to be consistent with Maryland law. Maryland has stated that exemptions should be liberally construed to effect their intent. *See In re Taylor, supra,* 312 Md. at 71, 537 A.2d at 1185, fn. 5 (and cases therein cited).

Further, Maryland's exemption statutes under which Debtor claimed her security deposit as exempt contain protections against waiver. Subsection 11–504(b) of the Courts and Judicial Proceedings Article, *supra,* sets forth basic exemptions for such things as the tools of a debtor's trade or profession, household goods and wearing apparel, and cash or property equivalent in value of $3,000. Subsection 11–504(d) provides that "[t]he debtor *may not waive,* by cognovit note or otherwise, the provisions of subsections (b) and (h) of this section." Md. Cts. & Jud. Proc.Code Ann. § 11–504(d) (1988 Cum.Supp.). (Emphasis supplied.) Elsewhere, a debtor in bankruptcy is given an additional $2,500 exemption to which this express prohibition against waiver is not applicable. *Id.* at § 11–504(f).

Section 11–507 of the Courts and Judicial Proceedings Article provides that exemptions may not impair certain liens, but a right of setoff is not among the listed liens. That section provides:

> § 11–507. *Exemptions not to impair certain liens.*

The provisions of this subtitle relative to exemptions do not impair a:

(1) Vendor's purchase money lien on land;

(2) Mechanics' lien;

(3) Tax lien;

(4) Mortgage; deed of trust; or other security interest.

Md. Cts. & Jud.Proc.Code Ann. § 11–507 (1984 Repl.Vol.).

In *Matter of Kapp,* 69 B.R. 652 (D.Md. 1987), the United States District Court found, consistent with an interpretation presented by the Attorney General of Maryland, that the phrase "other security interest" in Section 11–507(4) referred only to other security interests *in real property.* Consequently, the District Court affirmed the Bankruptcy Court's determination that both a judicial lien and a nonpossessory, nonpurchase money security interest in exempt tools of the trade were avoidable under 11 U.S.C. § 522(f)(1) and § 522(f)(2)(B), respectively.

It appears that most bankruptcy courts have held that a creditor may not exercise the right of setoff against exempt property. *See In re Wilde,* 85 B.R. 147 (Bankr.D. N.M.1988) (bank not allowed to use account funds claimed as exempt to setoff indebtedness owed bank by debtors even though the agreement between bank and debtors allowed a setoff); *In re Haley,* 41 B.R. 44 (Bankr.W.D.Va.1984) (rule acknowledged, but State law exemption could not be used to stop setoff against debt for intentional tort, namely, embezzlement); *In re Monteith,* 23 B.R. 601 (Bankr.N.D.Ohio 1982) (IRS setoff of tax refund, which Debtor claimed as exempt under Ohio law, against a dischargeable tax was avoided as in violation of 11 U.S.C. § 522(c)); *In re Haffner, supra* (and cases cited therein); *In re Terry,* 7 B.R. 880 (Bankr.E.D.Va.1980); *see also In re Pieri, supra* (setoff should not be allowed if contrary to public policy).

Potomac Edison cites several cases in support of its position. In *Matter of Houdashell,* 7 B.R. 901 (Bankr.W.D.Mo.1981), a utility was allowed to offset a prepetition security deposit against a prepetition debt, and the debtor was required to post a new security deposit as requested. The debtors in *In re Peabody,* 51 B.R. 157 (Bankr.D.Me. 1985) had signed a membership agreement with Associated Grocers which required them to establish a capital account which, under Associated's bylaws, was a pledge to secure all indebtedness. Associated was permitted to set off the capital account against debtors' prepetition indebtedness over the Trustee's objection. In *Brooks Shoe Mfg. Co. v. United Telephone Co.,* 39 B.R. 980 (E.D.Pa.1984), the District Court reversed a Bankruptcy Court order which had required the telephone company to turn over to the Chapter 11 debtor a prepetition deposit of less than the prepetition amount owed by the debtor.

The *Houdashell, Peabody* and *Brooks Shoe* cases are distinguishable. First, in each case the deposits which the Court allowed to be set off had not been claimed as exempt by the debtor. Therefore, it was not necessary in those cases to consider the competing rights of the debtor to exempt property and the creditor to set off. These competing rights are the issue in this case.

Second, in the *Peabody* and *Brooks Shoe* cases, there were pledges of the deposits as security for the payment of the bill. In *Peabody* the debtor signed a membership agreement which pledged its capital account to secure the indebtedness. In *Brooks Shoe* the Court referred to specific tariff language, binding on the parties, that the deposit stood " '*as security* for payment of future bills.' " 39 B.R. at 982. (emphasis in original)

No specific grant of a security interest from a customer to a utility is contained in the Maryland regulations. Rather, although the result may be the same in most situations, the Maryland regulations speak in terms of a residential customer establishing credit and of allowing a utility, in permissive setoff language, to apply a residential customer deposit against any unpaid balance. *E.g.,* COMAR 20.30.02.04–1 and .01(B).

In *Brooks Shoe, supra,* the district court characterized the deposit obligation alternatively as recoupment and as an advance payment, rather than as a setoff. 39 B.R.

at 982. The district court reasoned that the utility deposit obligation arose from the same transaction as the claim for payment for utility service. Therefore, it was "... more nearly akin to recoupment," than to setoff, which involves a counterclaim extrinsic to the claim in chief. The significance was that recoupment is merely a reduction to the claim against a debtor, rather than a setoff of mutual, but separate claims. *See* 4 *Collier on Bankruptcy* Para. 553.03 (15th ed. 1989); Black's Law Dictionary (5th ed. 1979).

Notwithstanding the diminishment of the importance of the common law distinctions between setoff and recoupment in modern pleading, in bankruptcy these distinctions retain significance. *In re B & L Oil Co.*, 782 F.2d 155 (10th Cir.1986). The significance of the distinctions in bankruptcy was described in *Lee v. Schweiker*, 739 F.2d 870, 875 (3rd Cir.1984):

> In bankruptcy ... setoff and recoupment play a role very different from their original role as rules of pleading. Setoff, in effect, elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, pre-petition claim against the creditor. *See* 11 U.S.C. § 506(a). Setoff is limited, however, by the provisions of 11 U.S.C. § 553. Among those limitations is that pre-petition claims against the debtor cannot be setoff against post-petition debts to the debtor. Recoupment, on the other hand, allows the creditor to assert that certain mutual claims extinguish one another in bankruptcy, in spite of the fact that they could not be "setoff" under 11 U.S.C. § 553. The justification for the recoupment doctrine is that where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable. *See In re Monongahela Rye Liquors*, 141 F.2d [864] at 869.

In the instant case, the application of the utility bill should be treated as a setoff because there are distinct and separate obligations of Debtor to pay her bills and of the utility relating to the deposit. The utility deposit and the rights thereto are governed separately by regulation. If the bills are paid as rendered, the utility deposit will ultimately be refunded, with interest. COMAR 20.30.02.05. Interest may even be payable annually to the customer. *Id.* at 20.30.02.04(D). Other courts have generally treated the application of security deposits as subject to the rules for setoff under 11 U.S.C. § 553 in bankruptcy cases. *See, e.g., In re Utica Floor Maintenance, Inc.*, 41 B.R. 941 (N.D.N.Y.1984) (even where elements for § 553 setoff present, utility's postpetition application of prepetition security deposit to unpaid prepetition bills could be delayed upon adequate factual showing of immediate and serious threat to reorganization of Chapter 11 debtor); *see also In re Scionti*, 40 B.R. 947 (Bankr.D. Mass.1984) (landlord's prepetition application of debtor/tenant's security deposit to unpaid rent was treated as a § 553 setoff in a preference action because the security deposit had created a debt of the landlord to the tenant contingent on the tenant's performance).

The case of *In re Kretzer*, 48 B.R. 585 (Bankr.D.Nev.1985), also cited by Potomac Edison, is inapposite because it merely upheld the right of a purchase money lienholder on a truck, which had been exempted, to foreclose after discharge.

This Court does not deny a utility's right generally to offset its prepetition deposits against the unpaid balance of its prepetition bills, after following the procedures for relief from stay required by the Bankruptcy Code if the offset is to be made postpetition. Where as here, however, the deposit has not been offset prepetition, where the deposit has been claimed as exempt, where the amount exempted is within the nonwaivable exemption amount under State law and Debtor has no other assets to exempt, and where there has not been an express grant of a security interest in the deposit to the utility to secure payment for future service, the general rule that a creditor may not exercise the right of setoff against exempt property should prevail. Therefore, the Court will deny

Potomac Edison's request for relief from stay to permit a setoff, and it will direct Potomac Edison either to apply Debtor's prepetition utility deposit to Debtor's postpetition deposit obligation or to refund it to Debtor.

## ORDER DIRECTING APPLICATION OF UTILITY DEPOSIT

Upon Debtor's motion for modification of security deposit and the response of Potomac Edison Company, after hearing and argument, and for the reasons stated in the Memorandum of Decision as to Offset of Utility Deposit filed contemporaneously herewith, it is this 31st day of August, 1989, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that Debtor's motion is granted; and it is further

ORDERED, that Potomac Edison Company apply Debtor's prepetition residential customer deposit of $175.98, including interest thereon, to Debtor's postpetition residential customer deposit obligations, or pay it over to Debtor if Debtor's postpetition deposit obligation has previously been satisfied.