537 A.2d 1179

**In re Robert Kenneth TAYLOR and Joyce Ann Taylor.**

**Misc. No. 10, Sept. Term, 1987.**

Court of Appeals of Maryland.

March 8, 1988.

McAuliffe, J., dissented and filed opinion, in which Cole, J., joined.

Raymond S. Smethurst, Jr. (Henry M. Rutledge, Barbara R. Trader and Adkins, Potts & Smethurst, on the brief), Salisbury, for appellant.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

CHARLES E. ORTH, Jr., Specially Assigned.

The democratic system of government under which we live is founded upon the concept that the individual is endowed "with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness." The Declaration of Independence para. 2 (U.S.1776). A tenet of this concept is that a person should not be imprisoned for debt. Md. Const., Art. III, § 38. A corollary of this tenet is that the debtor should not be stripped bare of his belongings and property so as to be rendered a pauper. A principle of the corollary is that a person shall not be

deprived of a fair opportunity to make an honest living so as not to be precluded from casting off the economic shackles with which his debts have bound him. Therefore, he should not be completely divested of the tools of his trade or profession.

The People of the State of Maryland have recognized this philosophy. Infused in the organic law of this State is the command:

> Laws shall be passed by the General Assembly, to protect from execution a reasonable amount of the property of the debtor. [Md. Const., Art. III, § 44.]

In compliance with this commandment, the General Assembly has declared to be "exempt from execution on a judgment"

> [w]earing apparel, books, tools, instruments, or appliances necessary for the practice of any trade or profession except those kept for sale, lease, or barter. [Maryland Code (1974, 1984 Repl.Vol.) § 11–504 (b)(1) of the Courts and Judicial Proceedings Article.]

This declaration is the subject of this case.

## I

### A

Robert K. Taylor and Joyce A. Taylor, his wife, sought to exempt certain property in bankruptcy proceedings pending in the United States Bankruptcy Court for the District of Maryland. The trustee objected and the bankruptcy court sustained his objection. It did not believe that the Maryland legislature intended that the tools-of-the-trade exemption of § 11–504 (b)(1) apply to "such large and expensive items" as the Taylors sought to exempt. The Taylors appealed to the United States District Court for the District of Maryland. The district court thought that the question of law presented was "novel" in that it had not been resolved in Maryland and looked to the Maryland Uniform Certification of Questions of Law Act, Maryland Code (1974, 1984 Repl.Vol.) § 12–601 through § 12–609 of the

Courts and Judicial Proceedings Article. The court inquired of us the intendment of the Maryland legislature in enacting § 11–504 (b)(1).[1] It certified this question to us:

> Are large, mobile farm implements and vehicles (*i.e.,* combine, grain head, header wagon, tanker, diesel tractors, trailer and a van used in part in the farming business) "tools, instruments, or appliances necessary for the practice of a trade or profession," thus qualifying as exempt property within § 11–504(b)(1) of the Maryland Courts & Judicial Proceedings Article of the Annotated Code of Maryland (1974)?

## B

For the purpose of resolution of the issue, the Taylors and the trustee have agreed on the statement of facts which we set out below with minor editing.

The Taylors are presently, and prior to their bankruptcy filing were, engaged in trade in Caroline County, Maryland, and the surrounding counties. Robert is and has been engaged in farming for over 16 years, and Joyce is and has been engaged in the merchandising of interior home decorations for over 9 years.

Robert's farming business before bankruptcy consisted of the planting, tending and harvesting of grain crops (corn, soybeans, wheat, barley) on approximately 113 acres of tillable land in Caroline County owned by him and an average of 2,000 acres of tillable land in Caroline and Talbot Counties leased from others; plus the contract harvesting and hauling of grain for other farms located in Caroline and Talbot Counties. Although the 113–acre home farm was foreclosed upon by the Federal Land Bank, Robert contin-

---

1. Maryland law is at issue because this State has opted out of the federal bankruptcy exemptions pursuant to 11 U.S.C. § 522 (b)(1) (1982). Maryland Code (1974, 1984 Repl.Vol.) § 11–504 (g) of the Courts and Judicial Proceedings Article provides:

    In any bankruptcy proceeding, a debtor is not entitled to the federal exemptions provided by § 522 (d) of the United States bankruptcy code.

ues to reside there and farm under a lease with the bank. In addition, he leases another 150 acres nearby.

This 263 acres of tillable ground is not sufficient to enable him to make a reasonable living as a grain farmer. To make a reasonable living as a grain farmer, he will need to farm a minimum of 500 acres of tillable land. Until then, he is compelled to supplement his farm earnings with some off-farm employment.

In order to farm properly the 263 acres of land referred to in the preceding paragraph and any additional acreage that he might arrange for, it is imperative that Robert have available to him certain tools and equipment, which include the property in dispute. These tools and implements are commonly used by others engaged in grain farming.

The farm equipment in dispute for which an exemption was denied and its approximate present value is as follows:

| Description | Value |
|---|---|
| John Deere 7720 combine (Ser. No. 459277) ) | |
| John Deere model 220 grain head ) | 20,000.00 |
| Homemade (header) wagon ) | |
| 1964 Fruehauf Tanker (VIN. UNE 185701) | 1,000.00 |
| 1974 Peterbilt Diesel Tractor (VIN. 586388) | 8,000.00 |
| 1977 Peterbilt Diesel Tractor (VIN. 85189N) | 12,500.00 |
| 1985 Homemade Trailer (VIN. AC145206MD) | 3,000.00 |

Joyce started her own home and interior decoration business in 1977. She visits prospective customers in their homes and demonstrates the accessories which she makes. She takes their orders, prepares these items in her home, and delivers them when finished. Several times a year, she rents facilities in which she conducts shows to which larger numbers of people are invited.

As a necessary part of her business, she carries merchandise cases in which she keeps samples of the merchandise she offers, and up to 12 display boards (measuring 3' x 4'

and 4' x 6') on which she displays the decorating accessories she sells.

To carry on her business it is necessary that she be able to travel to the homes of prospective customers and to display her items there, rather than requiring them to come to her home. In 1985, she purchased a 1985 Dodge Caravan Van, which greatly facilitated transporting the items necessary for her business and enabled her to show a larger and more diverse variety of product.

She keeps a record of the business miles traveled and the total mileage and furnishes these to her accountant for appropriate business deductions under Internal Revenue Service regulations. In 1985, her business use of the van, measured according to the above formula, was 73 percent and the personal use was 27 percent. In the bankruptcy proceedings, Joyce claimed only 73 percent of the value of the van exempt.[2]

## II

The exemption from execution on a judgment of tools and other items "necessary for the practice of any trade or profession" spelled out in § 11–504 (b)(1) is only one facet of a comprehensive legislative scheme apparent for over a century to preclude an individual from being completely stripped of his property by execution of a judgment against him. This scheme evolved to contain not only the "tools" exemption, but also exemptions for "[m]oney payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings." Section 11–504 (b)(2). It includes exemption of "[p]rofessionally prescribed health aids for the debtor or any dependent of the debtor," subsection (b)(3), and "[t]he debtor's interest, not to exceed $500 in value, in ... items that are held

---

2. Although the certified question indicates that the van was used in the farming business of Robert, it is clear from the statement of facts that it was used in Joyce's trade as a travelling merchandiser of interior decorations and not in Robert's operation of the farm.

primarily for the personal, family, or household use of the debtor or any dependent of the debtor," subsection (b)(4). Also, upon certain election by the debtor, "[c]ash or property of any kind equivalent in value to $3,000 is exempt...." Subsection (b)(5). Furthermore, the debtor is prohibited by subsection (d) from waiving, "by cognovit note or otherwise," the exemptions provided him by subsection (b). In addition to the exemptions provided in § 11–504 (b), and in other statutes of this State,

> in any proceeding under Title 11 of the United States Code, entitled "Bankruptcy," any individual debtor domiciled in this State may exempt the debtor's aggregate interest, not to exceed $2,500 in value, in real property or personal property. [Section 11–504 (f).]

The evolution of the exemption provisions to their present status demonstrates clearly the recognition of the legislature that exemptions from execution on judgments must reflect the times; they should not be so static as to be ineffectual to accomplish their purpose.

## A

The command to the General Assembly to pass laws to protect property of a debtor from execution first appeared in the Constitution of 1851 as § 39 of Article III. Directed to the "legislature," the provision specified that the property be of a "reasonable amount" but "not exceeding in value the sum of five hundred dollars." With the exception of the substitution of "General Assembly" for "legislature," the provision was retained in that form in the Constitution of 1864 as § 43 of Article III, and in the Constitution of 1867, the one in effect today, as § 44 of Article III. By Acts 1976, ch. 549, ratified 2 November 1976, the section was amended by deleting "not exceeding in value the sum of five hundred dollars." As it stands today, the only constitutional limitation on the property of a debtor to be protected from execution is that it be in a "reasonable amount." Obviously the legislature in proposing the amendment and the People in ratifying it were prompted by the realization

that the dollar of 1851 was not the same as the dollar of 1976.

## B

The appreciation of the General Assembly that the exemptions from execution must be in tune with the times is evident from the history of the "tools" exemption. The "tools" exemption appeared in this form in Acts 1861, ch. 7, § 4:

[A]ll wearing apparel, books, and the tools of mechanics ... [except] any books or tools kept for sale.

Acts 1884, ch. 504 repealed § 4 and re-enacted it to read:

[A]ll wearing apparel, mechanical text books and books of professional men, tools of mechanics, and all tools or other mechanical instruments or appliances moved or worked by the hand or foot, necessary to the practice of any trade or profession, and used in the practice thereof, shall be exempt from execution, in addition to the property hereinbefore exempted; but this section shall not apply to any books, tools, mechanical instruments or appliances kept for sale or barter.

The exemption appeared in the various codes thereafter in that language (see Md.Code (1957, 1969 Repl.Vol.) Art. 83, § 11) until 1973.

By Acts 1973, 1st Sp.Sess., ch. 2, § 1, enacted upon a proposal by the Governor's Commission to Revise the Annotated Code of Maryland, the legislature repealed Art. 83, § 11. It incorporated the exemptions from execution of judgments in § 11-504 of a comprehensive new article of the code entitled Courts and Judicial Proceedings. Subsection (a)(3) exempted from execution on a judgment

[w]earing apparel, books, tools, instruments, or appliances necessary for the practice of any trade or profession except those kept for sale or barter.

Acts 1980, ch. 546 designated subsection (a)(3) as subsection (a)(1) with no change in the language. Acts 1981, ch. 765 designated the "tools" subsection as subsection (b)(1). The

language remained the same except for the addition of "lease" to the exceptions spelled out. As seen *supra,* the "tools" exemption stands today as then worded.

The General Assembly had ample opportunity to amend the "tools" exemption. In addition to 1980 and 1981, it visited § 11–504 on a number of occasions. *See* Acts 1974, ch. 316; Acts 1975, ch. 430; Acts 1976, ch. 383; Acts 1977, ch. 356; Acts 1982, ch. 703; Acts 1983, ch. 175 and ch. 554; Acts 1984, ch. 255. The various amendments made by those acts left the "tools" exemption inviolate. But the amendments made from time to time demonstrate the continuous general concern of the legislature in tailoring the exemptions to fit the times. Many of the amendments, for example, increased the permissible value of property subject to exemption, added new items to be exempted, and substituted more general terms for the designation of specific items.[3]

It is not that the legislature overlooked the "tools" exemption in its frequent reconsideration of § 11–504. The Department of Legislative Reference bill file for S.B. 253, passed as Acts 1980, ch. 546, contains a chart which compared the proposed law with the existing law. The proposed law indicated no restriction on tools except that they be necessary "for the practice of any trade or profession" and that they were not to be kept for "sale or barter." Nor was the legislature unaware from time to time of the federal provisions pertaining to exemptions from execution. The bill file for S.B. 253 also contains a letter from William H. Adkins, II, then State Court Administrator and now a judge of this Court, to the Chairman of the Judicial Pro-

---

**3.** For example, Acts 1980, ch. 546 included among the exempt items as § 11–504 (a)(3):

> [O]ne stove, one washing machine, one refrigerator, kitchen utensils and dishes, one bed and mattress for each member of the defendant's family, blankets, sheets, pillows and pillow cases, chest of drawers, one kitchen table and chairs, and food to be consumed by the defendant and his family....

This was deleted by Acts 1981, ch. 765 and more general terms substituted.

ceedings Committee. The letter enclosed a comparison of the federal statute with the proposed Maryland statute. The Administrator observed, "By and large, the monetary limits on the federal exemptions seem to be less than those under state law, with the exception of the $1,000 or equivalent amount of property." The comparison report noted that the "tools" exemption in the federal statute had a limitation of $750 (11 U.S.C. § 522 (d)(6) (1982)) while under Maryland law there was no monetary limitation. The legislature chose not to follow the federal law. In fact, the next year it denied the entitlement of a debtor to the federal exemptions in any bankruptcy proceeding. Acts 1981, ch. 765; Md.Code (1974, 1984 Repl.Vol.) § 11–504 (g) of the Courts and Judicial Proceedings Article. *See* note 1, *supra.*

## III

In the light of this history, we seek the legislative intent in enacting the "tools" exemption in its present form. The former law, codified as Art. 83, § 11, was amended in 1973 in the following manner:

> All wearing apparel, ~~mechanical textbooks and~~ books ~~of professional men~~, tools[,] ~~of mechanics and all tools or other mechanical~~ instruments[,] or appliances ~~moved or worked by hand or foot~~, necessary to the practice of any trade or profession ~~and used in the practice thereof, shall be exempt from execution, in addition to the property hereinbefore exempted, but this section shall not apply to any books, tools, mechanical instruments or appliances~~ [, except those] kept for sale or barter.

It was codified, as we have seen, as § 11–504 (a)(3), now § 11–504 (b)(1), of the Courts and Judicial Proceedings Article. The Revisor's Note to § 11–504 stated that the section "is new language derived from the same provisions which presently appear in Article 83, §§ 8, 9, 11, and 13." He discussed certain subsections of § 11–504 but did not directly refer to the "tools" exemption subsection. His Note lends guidance more from what he did not say than from what he did say. He did not indicate, as was the case

in some other Notes, whether the changes in the "tools" exemption were or were not "of a substantive nature," or that the language stricken was dropped as simply superfluous, or that the new phrasing was no more than a synthesis of the old language, merely restating the former law. We think that the new enactment was more than a streamlining of the old statute. We find it inescapable that the General Assembly intended that the new subsection have a significantly different import.

The charge to the Commission to Revise the Annotated Code of Maryland included the "elimination of obsolete ... provisions...." The Commission *Report No. 3F to the General Assembly of Maryland* at 1 (16 July 1973). The Revisor's Manual at 14 (September 1971) stated:

> If time, circumstances or other factors have rendered the item obsolete or no longer effective ... the item will be excluded....

*See also* the Commission *Report No. 3 to the Legislative Council of Maryland* at 2 (14 August 1972). We believe that the Commission in suggesting the "new language" derived from "the old provisions," and that the legislature in accepting the amendment as proposed, were not merely prompted by a general improvement in language and expression. We think that the intent in eliminating the language stricken was to bring the exemption in tune with modern times and satisfy the constitutional mandate. We cannot conceive that the legislature was other than fully cognizant that tools "moved by hand or foot," which were adequate to engage in a trade or the practice of a profession in 1884, were not adequate in 1973. Nor do we find it plausible that the legislature would think that the limitation of tools, instruments and appliances to those that were "mechanical" would serve the purpose of the constitutional dictate today. Certainly, in these times, the use of power tools rather than hand operated tools is necessary in the trade of carpentry. Medical doctors in most disciplines depend on sophisticated equipment in the practice of their profession. Automobile mechanics and car body repairmen

look to electronic and power machinery in plying their trade. Electric typewriters, and to an increasing degree, word processors, are a staple of secretaries, journalists, authors and other writers. Singers and musicians require sound systems. Computers are a must to accountants and to others in many trades and professions. Electric sewing machines are essential to dressmakers. There are endless examples illustrative of the fact that, in modern times, expensive tools, instruments, and appliances other than those "moved or worked by hand or foot" are necessary to the practice of most trades and professions. It boils down to a truism: The tools of the past are inadequate to the present.

The adequacy of tools, instruments, or appliances moved or worked by hand or foot to meet the needs of a trade or profession in the face of today's technology is brought sharply home in the field of agriculture. The Taylors refer us to an article which neatly sums up the past and present status of the farmer.

In the past, farms commonly had a house, barn, sheds, horses, mules, and a limited amount of equipment. Beginning in the '40s, this typical inventory was transformed by a swift and prodigious change from man and animal power to machine and electrical power.

\* \* \* \* \* \*

Before mechanization and high-tech wizardry invaded Maryland agriculture, farmers depended heavily on manual labor.

\* \* \* \* \* \*

Fifty to sixty years ago ... most farmers were happy to be able to harness a few living examples of reliable "horse power," and often scoffed at those mechanical contraptions bumping and thumping their way down country roads thanks to engines measured in "horsepower."

Today, plows powered by horses are owned by farmers peddling nostalgia to tourists. [Maryland Department of

Agriculture, Pub. No. 222–86, *Yesterday, Today and Tomorrow* 27, 36 (1986).]

Farmers, like others in various trades and professions, are no longer bound to what is, by today's standards, the outmoded technology of the past.

## IV

With this background, we examine the statutory provisions of § 11–504 (b)(1) in conjunction with the constitutional commandment of Art. III, § 44. It comes out that wearing apparel, books, tools, instruments, or appliances of a debtor, in a reasonable amount, which are necessary for the practice of the debtor's trade or profession (except those kept for sale, lease, or barter) are exempt from execution on a judgment.[4]

There is no fixed monetary value attached to the items. The legislature was content to abide by the general limitation of "a reasonable amount" designated by the Constitution. It chose not to define that term more explicitly. Nor did it go further with respect to the items specified to be exempted than to require that they be "necessary for the practice of any trade or profession," and not "kept for sale, lease, or barter." It did not designate with specificity the kinds of "wearing apparel," or the subjects of the "books," or the types of "tools, instruments, or appliances" which were "necessary for the practice of any trade or profession." It did not limit the items to a given number, or qualify them as to size, or weight, or define their character, properties, or attributes in any other manner. We see the legislative intent in enacting § 11–504 (b)(1) emanating bright and clear from the plain language of the subsection.

---

**4.** The exemption provisions do not impair a:
    (1) Vendor's purchase money lien on land;
    (2) Mechanics' lien;
    (3) Tax lien;
    (4) Mortgage; deed of trust; or other security interest.
Maryland Code (1973, 1984 Repl.Vol.) § 11–507 of the Courts and Judicial Proceedings Article.

The subsection is a reflection of the constitutional dictate and glows in the light of the past actions of the legislature concerning the exemption statutes. The legislative intent is that any and all wearing apparel, books, tools, instruments, or appliances are exempt from execution on a judgment if they are *reasonably necessary* for the practice of the debtor's trade or profession. Due consideration must be given to the purpose of granting the exemptions and the objectives to be fulfilled by the granting of them.[5]

We are satisfied that this view of the law is in accord with the letter of the "tool" exemption statute, complies with the constitutional dictate, and fulfills the legislative intent. The debtor would not be forced to give up his trade or profession by lack of necessary tools. He would be able to make a fresh start toward earning a fair living. Of course, he may not be fully restored by the exemptions granted to the position he enjoyed before his difficulties. His operations may well be substantially curtailed, and rightfully so, in the interest of his creditors. The objectives of the "tool" exemption do not reach beyond making it possible for him to start from scratch by not stripping him of all of his property and tools of his trade or profession. In any event, he is not forced to disassociate himself from his chosen career. By being able to continue it, he is not deprived of the opportunity to make a fair living in his trade or profession. He is not entitled to more.

In answer to the question certified to us, it appears from our view of § 11–504 (b)(1) that, contrary to the opinion of the bankruptcy court, the items the Taylors seek to exempt are within the category of "tools, instruments, and appliances" set out in the subsection. But it does not follow therefrom that the items are, as a matter of law, per se to

---

5. This Court made known in *Muhr v. Pinover,* 67 Md. 480, 487, 10 A. 289 (1887), that exemption from execution on a judgment law "ought to be liberally construed." It quoted this observation in *Darby v. Rouse,* 75 Md. 26, 28, 22 A. 1110 (1891), and in *Fowler v. Gray,* 99 Md. 594, 599, 58 A. 444 (1904). The Court has not spoken to the contrary since.

be exempted from execution. The items must be *reasonably* necessary to qualify for exemption. The determination of what is reasonably necessary is to be resolved in the light of the particular circumstances and with due regard given the objectives of the statute. The ascertainment of what items are reasonably necessary in that frame of reference is a question of fact. It is to be decided by the trier of fact, not by us.

CERTIFIED QUESTION ANSWERED AS HEREIN SET FORTH; COSTS TO BE DIVIDED EQUALLY AMONG THE PARTIES.

McAULIFFE, J., dissenting, in which COLE, J., joins.

McAuliffe, Judge, dissenting.

The Court today holds that a farmer forced to bankruptcy may keep his tractor. That may seem unremarkable, until one considers that the tractor involved here is not a John Deere, but a Peterbilt. It will never plow a field, for it is the working part of a tractor-trailer rig—an over-the-road truck. The Court says that not only is this tractor a "tool of the trade" of the farmer, but two of them are, and so is a Fruehauf tanker truck. I cannot agree.

Unfortunately, the statute creating the "tools of the trade" exemption is susceptible to at least two quite disparate interpretations. Section 11–504(b)(1) of the Courts and Judicial Proceedings Article provides that the following items are exempt:

> Wearing apparel, books, tools, instruments, or appliances necessary for the practice of any trade or profession except those kept for sale, lease, or barter.

Initially, there is the question of what is a "trade" or a "profession." I suspect that when first used by the Legislature, those words had a much narrower connotation than we give them today. The broader of the two, "trade," most likely meant skilled handicrafts.[1] Contemporary usage cer-

---

1. *The Oxford English Dictionary,* Vol. XI, 1961.

tainly encompasses a more expansive application of both words, and without pausing to discuss the relative merits of the dynamic or strict construction views of statutory construction, let me simply concede that the words themselves will support a very narrow or a very broad interpretation. Similarly, the words "tools," "instruments," and "appliances" may be afforded meanings that would permit inclusion of a very broad spectrum of items.

But the Legislature never intended to exempt all "tools, instruments, or appliances." The words "necessary for the practice of any trade or profession" are intended as words of limitation. Unfortunately, the expansive meaning afforded the words "trade or profession" by the majority, sufficient to embrace any business, destroys the intended limitation.

The admonition of Article III, § 44 of the Maryland Constitution, that the General Assembly shall pass laws "to protect from execution a *reasonable amount* of the property of the debtor," (emphasis added) should suggest a reasonably narrow interpretation of statutes intended to give it effect. Instead, the majority classifies virtually everything as a "tool of the trade," and suggests that effect be given to the Constitution by limiting the exemption to those things that are reasonably necessary to enable the bankrupt to carry on his business. No criteria are furnished—instead we answer the inquiry of the federal court by saying that "[t]he determination of what is reasonably necessary is to be resolved in the light of the particular circumstances and with due regard given the objectives of the statute."

The majority finds that the 1973 amendment to this statute was "more than a streamlining of the old statute" and that the General Assembly "intended that the new subsection have a significantly different import." That is a rather interesting conclusion, when one considers: the amendment was accomplished solely as a part of the Code revision process; the Revisor repeatedly told the Legislature that no substantive change was intended unless specifically noted; and the Revisor waved no promised flag of

substantive change with respect to this section. Intriguing is the majority's suggestion that the Revisor's Note "lends guidance more from what he did not say than from what he did say," and that the Revisor's failure to indicate that the changes were of a substantive nature somehow indicates that they were. Majority opinion at 12. I find that difficult to reconcile with a rule of statutory construction firmly established in this State:

Recodification of statutes is presumed to be for the purpose of clarity rather than change of meaning. Thus, even a change in the phraseology of a statute by a codification will not ordinarily modify the law unless the change is so material that to modify the law appears unmistakably from the language of the Code. *Rohrbaugh v. Estate of Stern*, 305 Md. 443, 449, 505 A.2d 113 (1986) (quoting *Consumer Protection v. Consumer Pub.*, 304 Md. 731, 768, 501 A.2d 48 (1985) and *In re Special Investigation No. 236*, 295 Md. 573, 576–77, 458 A.2d 75 (1983)).

*See also Duffy v. Conaway*, 295 Md. 242, 257–58, 455 A.2d 955 (1983); *Office & Prof. Employees Int'l v. MTA*, 295 Md. 88, 100, 453 A.2d 1191 (1982); *Hoffman v. Key Fed. Sav. & Loan*, 286 Md. 28, 43, 416 A.2d 1265 (1979); *Bureau of Mines v. George's Creek*, 272 Md. 143, 155, 321 A.2d 748 (1974).

I am willing to ascribe to the Revisor and the Legislature the specific intent to eliminate, as obsolete, the description of tools of the trade as those "moved or worked by hand or foot." That change would permit the carpenter to include, as an exempted tool of his trade, the power hand saw he carries with him from job to job. It would not, I suggest, include the right to include as exemptions the large table saws of a furniture factory.

Quite apart from my disagreement with the majority's decision to jettison any limiting influence of the words "trade or profession," I am unable to accept the classification of the tractors, trailers, wagon, and van as "tools, instruments, or appliances." I am also unwilling to accept

the conclusion of the majority that included within the tools of a trade or profession exemption are: the electronic diagnostic machines of auto mechanics, the electric typewriter and word processors of secretaries, the sound systems of musicians, and the computers of accountants. By considering virtually everything that is usable as a "tool, instrument, or appliance," and every enterprise for profit as a "trade or profession," the majority has divorced the exemption from its original, limited scope. Presumably, the Lear jet of the charter pilot is potentially exempt as a tool of his trade, as is the tractor-trailer of the long distance truck driver. I suggest that this interpretation is well outside the intendment of the Legislature. It confuses capital assets of the debtor, which should be available to the creditors, with tools of the trade of skilled tradesmen and professionals, which should be exempted. In *Matter of Patterson*, 825 F.2d 1140 (7th Cir.1987), a bankrupt dairy farming couple claimed an exemption for their tractors and cows as tools of their trade. Their contention was that

> both tractors and cows are instrumentalities for turning raw materials (grass, hay, water, etc.) into salable products (milk, cheese, etc.) and therefore are tools of the farming trade in a broad sense.

Judge Posner, writing for the Seventh Circuit Court of Appeals, explained why the exemption would not be allowed:

> If "tools" is to be given so capacious a definition as the Pattersons urge, then the exemption is not for the tools of a person's trade but for the capital assets of his business, even though it is to those assets that creditors primarily look for repayment of the bankrupt's debts.

> x * * * * *

> The purpose of the tools of the trade exemption is to enable an artisan to retain tools of modest value so that he is not forced out of his trade. Although as a matter of semantics farm "implements" could be thought to cover

machinery and vehicles as well as hand tools, this would be an incongruous interpretation.

*　　*　　*　　*　　*　　*

States have long granted an exemption for tools or implements of the trade, and in interpreting these exemptions state courts have generally distinguished between personal hand tools of modest value, on the one hand, and machinery on the other. See 3 Collier on Bankruptcy ¶ 522.15, at p. 522–52.3 n. 1 (15th ed., King ed., 1986).

*　　*　　*　　*　　*　　*

There would be no semantic violence in regarding the Pattersons' tractor as a tool of the farming trade ... but, while the question is a close one, we think the tractor is no more a tool of the trade in the statutory sense than the cow is. The tractor is not a modest implement but an expensive piece of machinery. It is one of the principal capital assets of a small farm. To exempt it would be like exempting the airplanes owned by an air charter service. *Matter of Patterson, supra,* 825 F.2d at 1146–47.

Until 1976, the tools of the trade exemption was subject to a constitutional limitation of $500. The removal of that limitation was not intended to substitute Peterbilt tractors for hand saws, but to delete from the Constitution a specific dollar amount that could not readily be changed to reflect changes in the economy. The dollar limitation that lasted for so long is instructive, however, in determining the intended scope of the exemption.

Although there will be cases presenting close questions as to what should be considered a tool of the trade within the meaning of this exemption, and how much of the value of qualifying tools should be exempted as reasonable, this is not such a case. I agree with the common sense position taken by the trustee and the bankruptcy judge—none of the items listed in the certified question is a tool, instrument, or

appliance of a trade or profession within the meaning of the Maryland exemption statute.

Judge COLE concurs in the views expressed herein.