987 A.2d 48

Curtis O. ROSEMANN

v.

**SALSBURY, CLEMENTS, BEKMAN, MARDER & ADKINS, LLC.**

**No. 39, Sept. Term, 2009.**

Court of Appeals of Maryland.

Jan. 13, 2010.

310

Harry B. Siegel (Kristine J. Rea, Columbia, MD), on brief, for Petitioner.

Michael P. Smith (Salsbury, Clements, Beckman, Marder & Adkins, LLC, Baltimore, MD), on brief, for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, GREENE, MURPHY, BARBERA, JOHN C. ELDRIDGE (Retired, Specially Assigned) and LAWRENCE F. RODOWSKY (Retired, Specially Assigned), JJ.

HARRELL, Judge.

Curtis O. Rosemann ("Mr. Rosemann" or the "Judgment Creditor"), the custodial parent of two minor children, filed writs of garnishment in the Circuit Court for Howard County seeking to execute on two judgments against his former wife, Rosalind Rosemann ("Ms. Rosemann" or the "Judgment Debtor"), for unpaid child support obligations. The writs sought to garnish funds that a law firm held for the benefit of Ms. Rosemann in connection with the settlement of a civil claim against a third party for alleged personal injuries she suffered. The Circuit Court held that the money was exempt because it was compensation for a personal injury, and therefore protected by § 11–504(b)(2) of the Courts and Judicial Proceedings

Article, Md.Code (1974, 2006 Repl. Vol. & Supp.2009), a statute providing that certain property is exempt from execution on a judgment.[1] On appeal, the Court of Special Appeals affirmed. We granted Mr. Rosemann's petition for a writ of certiorari to consider whether money received as part of a settlement in a personal injury case is exempt from execution on a judgment for child support arrearages. 408 Md. 487, 970 A.2d 892 (2009). We shall affirm the judgment of the intermediate appellate court and, for the reasons set forth below, hold that apparently the Legislature intended for the funds to be exempt from execution on a judgment, even one representing child support arrearages.

## I. FACTS

The Rosemanns were married on 16 February 1985. The marriage yielded two children. On 16 February 1995, the Circuit Court for Howard County granted the Rosemanns an absolute divorce. At that time the court made no provision for child support. On 4 June 1999, the court ordered Ms. Rosemann to pay child support to Mr. Rosemann in the amount of $554.92 per month. On Ms. Rosemann's appeal, the Court of Special Appeals directed entry of a revised amount of $533.61 per month.

Over the ensuing years, Ms. Rosemann did not pay the child support as ordered. As a consequence, Mr. Rosemann obtained two judgments against his ex-wife for the child support arrearages—one in the amount of $3,851.70, plus interest, entered in 2001 by the Circuit Court and one in the amount of

---

1. Section 11–504 provides, in pertinent part:
   (b) The following items are exempt from execution on a judgment:

   * * *

   (2) Money payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings. This exemption includes but is not limited to money payable on account of judgments, arbitrations, compromises, insurance, benefits, compensation, and relief. Disability income benefits are not exempt if the judgment is for necessities contracted for after the disability is incurred.
   § 11–504(b)(2).

$30,709.38, plus interest, entered by the Superior Court of Maricopa County, Arizona,[2] and enrolled in the Circuit Court.

On 6 May 2005, Ms. Rosemann was injured while a passenger on board an America West ("the airline") flight. She hired Salsbury, Clements, Bekman, Marder & Adkins, LLC (the "law firm") of Baltimore City to represent her regarding her personal injury claim against America West. The law firm filed suit on her behalf against the airline in the U.S. District Court for the District of Maryland.[3] The airline and Ms. Rosemann reached a settlement in the amount of $30,000.00. The check representing the settlement proceeds was made payable to Rosalind Rosemann and the law firm as her attorney.

Discovering this, Mr. Rosemann filed in the Circuit Court two writs of garnishment against Ms. Rosemann and the law firm, in whose trust account the latter kept Ms. Rosemann's share of the settlement proceeds. The first writ sought to execute on the enrolled Arizona judgment. The second writ sought to execute on the judgment entered originally by the Circuit Court. The law firm filed answers claiming that the "funds are exempt from execution on a judgment pursuant to Section 11–504(b)(2) of the Courts and Judicial Proceedings Article. . . ." The trial court consolidated the garnishment proceedings. Cross-motions for summary judgment ensued. After a hearing, the trial court granted the law firm's motion for summary judgment and entered judgment in its favor.[4] Mr. Rosemann filed a timely appeal to the Court of Special

---

**2.** The Circuit Court approved Mr. Rosemann's relocation to Arizona with the children in 2002. He enrolled the Maryland child support decree in Arizona and enforced it there through a contempt petition for non-payment of child support.

**3.** According to the law firm's brief here, the personal injury lawsuit was captioned as: *"Rosalind Rosemann v. U.S. Airways,* Civil No. RDB–1:07–cv–2105."

**4.** According to the parties' briefs, no transcript of the proceedings before the trial court was prepared because the parties agreed to proceed before the Court of Special Appeals as an Expedited Appeal, as allowed by Maryland Rule 8–207(b), with an agreed statement of facts.

Appeals, which affirmed in an unreported opinion. Mr. Rosemann filed a petition for a writ of certiorari, which we granted, 408 Md. 487, 970 A.2d 892 (2009), to consider the following question:

> Did the trial court err in granting the garnishee's motion for summary judgment and denying the judgment creditor's motion for summary judgment on the ground that Courts Article, Section 11–504(b)(2) provides an exemption from execution for money payable in the event of sickness, accident or injury, even though Maryland and federal public policy favor excepting a judgment for child support from the exemption statutes?

## II.  STANDARD OF REVIEW

■  The facts are agreed to by the parties.  We are asked to interpret a statute, a purely legal question.  *Harvey v. Marshall*, 389 Md. 243, 257, 884 A.2d 1171, 1179 (2005) (citing *Mohan v. Norris*, 386 Md. 63, 66–67, 871 A.2d 575, 577 (2005)); *see also Pub. Service Comm'n v. Wilson*, 389 Md. 27, 45, 882 A.2d 849, 860 (2005); *Reichs Ford Rd. Joint Venture v. State Roads Comm'n of the State Highway Admin.*, 388 Md. 500, 516, 880 A.2d 307, 316 (2005); *Davis v. Slater*, 383 Md. 599, 604, 861 A.2d 78, 80–81 (2004).  Therefore, our review is non-deferential to the judgments of the intermediate appellate court and the trial court.  *Harvey*, 389 Md. at 257, 884 A.2d at 1179 (citing *Mohan*, at 66–67, 871 A.2d at 577); *Wilson*, 389 Md. at 45, 882 A.2d at 860; *Reichs Ford Rd. Joint Venture*, 388 Md. at 516, 880 A.2d at 316.

## III.  THE RELEVANT PRINCIPLES OF STATUTORY CONSTRUCTION

■  " 'The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature.' "  *Lonaconing Trap Club, Inc. v. Md. Dept. of the Env't*, 410 Md. 326, 338, 978 A.2d 702, 709 (2009) (quoting *Bd. of Educ. v. Zimmer–Rubert*, 409 Md. 200, 212, 973 A.2d 233, 241 (2009)).  " 'Statutory construction begins with the plain language of the

statute, and ordinary, popular understanding of the English language.'" *United States v. Ambrose*, 403 Md. 425, 438, 942 A.2d 755, 763 (2008) (quoting *Kushell v. Dep't of Natural Res.*, 385 Md. 563, 576–77, 870 A.2d 186, 193–94 (2005)). " '[W]e neither add nor delete language so as to reflect an intent not evidenced in the plain language of the statute; nor [do we] construe the statute with forced or subtle interpretations that limit or extend its application.'" *Lonaconing*, 410 Md. at 339, 978 A.2d at 709 (quoting *Ambrose*, 403 Md. at 439, 942 A.2d at 763). "This Court reads the statute as a whole to ensure that none of its provisions are rendered meaningless." *Id.* We will not construe a statute to reach a result " 'that is unreasonable, illogical, or inconsistent with common sense.'" *Id.* (quoting *Zimmer–Rubert*, 409 Md. at 215, 973 A.2d at 242). If the language of the statute is clear and unambiguous, we need look no further than the language of the statute to ascertain the Legislature's intent. *Anderson v. Council of Unit Owners of the Gables on Tuckerman Condominium*, 404 Md. 560, 572, 948 A.2d 11, 19 (2008). When the language of the statute is subject to more than one interpretation, it is ambiguous and we usually look beyond the statutory language to the statute's legislative history, prior case law, the statutory purpose, and the statutory structure as aids in ascertaining the Legislature's intent. *Id.*; *see also Kortobi v. Kass*, 410 Md. 168, 177, 978 A.2d 247, 252 (2009); *Chesapeake Charter, Inc. v. Anne Arundel County Bd. of Educ.*, 358 Md. 129, 135, 747 A.2d 625, 628 (2000). Where a statute is ambiguous, we also "consider 'the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.'" *Chesapeake Charter, Inc.*, 358 Md. at 135, 747 A.2d at 628 (quoting *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75, 517 A.2d 730, 732 (1986)).

With regard to the specific type of statute that we consider in the present case, an "exemption from execution of a judgment law 'ought to be liberally construed.'" *In re Taylor*, 312 Md. 58, 71 n. 5, 537 A.2d 1179, 1185 (1988) (quoting *Muhr v. Pinover*, 67 Md. 480, 487, 10 A. 289, 289

(1887)); *see also Fowler v. Gray,* 99 Md. 594, 599, 58 A. 444, 446 (1904); *Darby v. Rouse,* 75 Md. 26, 28, 22 A. 1110, 1110 (1891). When construing an exemption from execution statute, this Court gives "due consideration . . . to the purpose of granting the exemptions and the objectives to be fulfilled by the granting of them." *In re Taylor,* 312 Md. at 71, 537 A.2d at 1185.

## IV. ANALYSIS

The Maryland Constitution directs the General Assembly to pass laws "to protect from execution a reasonable amount of the property of the debtor." Md. Const. art. III, § 44. Section 11–504 of the Maryland Code, Courts and Judicial Proceedings Article (1974, Repl. Vol. 2006 & Supp.2009), for its part, purports to carry out this mandate. *See In re Taylor,* 312 Md. 58, 60, 537 A.2d 1179, 1180 (1988) (observing that, in compliance with the "commandment" in Article III, § 44, the General Assembly enacted § 11–504). Section 11–504(b) provides certain property to be "exempt from execution on a judgment." Section 11–504(b)(2), the exemption to which the Judgment Debtor looks for protection in the present case, exempts from execution:

> Money payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings. This exemption includes but is not limited to money payable on account of judgments, arbitrations, compromises, insurance, benefits, compensation, and relief. Disability income benefits are not exempt if the judgment is for necessities contracted for after the disability is incurred.[5]

---

**5.** In addition to the personal injury proceeds exemption enumerated in § 11–504(b)(2), the statute also exempts the following:

(1) Wearing apparel, books, tools, instruments or appliances, in an amount not to exceed $5,000 in value necessary for the practice of any trade or profession except those kept for sale, lease, or barter.

\* \* \*

(3) Professionally prescribed health aids for the debtor or any dependent of the debtor.

■ We conclude here that the language of § 11–504(b)(2) is unambiguous, and, thus, we need look no further than the language of the statute to ascertain the Legislature's apparent intent. The statute exempts from execution on a judgment "[m]oney payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings." § 11–504(b)(2). This exemption is broad. It contemplates a variety of payment sources, including "money payable on account of judgments, arbitrations, compromises, insurance, benefits, compensation and relief." *Id.*

In *In re Taylor*, we considered the "tools" exemption found in § 11–504(b)(1). 312 Md. at 60–61, 537 A.2d at 1180. At the time that case was decided, § 11–504(b)(1) exempted from execution on a judgment " '[w]earing apparel, books, tools, instruments, or appliances necessary for the practice of any trade or profession except for those kept for sale or barter.' " 312 Md. at 59, 537 A.2d at 1180 (quoting Md.Code Ann. Cts. & Jud. Proc. (1974, 1984 Repl. Vol.) § 11–504(b)(1)). There we observed

---

(4) The debtor's interest, not to exceed $1,000 in value, in household furnishings, household goods, wearing apparel, appliances, books, animals kept as pets, and other items that are held primarily for the personal, family, or household use of the debtor or any dependent of the debtor.

(5) Cash or property of any kind equivalent in value to $6,000 is exempt, if within 30 days from the date of the attachment or the levy by the sheriff, the debtor elects to exempt cash or selected items of property in an amount not to exceed a cumulative value of $6,000.

(6) Money payable or paid in accordance with an agreement or court order for child support.

(7) Money payable or paid in accordance with an agreement or court order for alimony to the same extent that wages are exempt from attachment under § 15–601.1(b)(1)(ii) or (2)(i) of the Commercial Law Article.

§ 11–504(b).

Section 11–504 also provides that, in "any proceeding under Title 11 of the United States Code, entitled 'Bankruptcy', any individual debtor domiciled in this State may exempt the debtor's aggregate interest, not to exceed $5,000 in value, in real property or personal property." § 11–504(f). Subsection (h) provides that an interest in certain retirement plans also shall be exempt. *Id.* § 11–504(h).

the legislative intent in enacting § 11–504(b)(1) emanating bright and clear from the plain language of the subsection. The subsection is a reflection of the constitutional dictate and glows in the light of the past actions of the legislature concerning the exemption statutes. The legislative intent is that any and all wearing apparel, books, tools, instruments, or appliances are exempt from execution on a judgment if they are *reasonably necessary* for the practice of the debtor's trade or profession.

*Id.* at 70–71, 537 A.2d at 1185.

With regard to § 11–504(b)(2) in the present case, we also see "the legislative intent . . . emanating bright and clear from the plain language of the subsection." *Id.* at 70, 537 A.2d at 1185. The federal Court of Appeals for the Fourth Circuit opined that the purpose behind the personal injury exemption found in § 11–504(b)(2) is to "withhold[ ] from creditors funds necessary to recompense the debtor for injuries to his physical person, to make the debtor whole in the eyes of the law, and to restore human capital to the extent monetarily possible." *In re Butcher*, 125 F.3d 238, 241 (4th Cir.1997). In *Niedermayer v. Adelman*, 90 B.R. 146 (D.Md.1988), the bankruptcy court also considered the underlying purpose of the personal injury exemption:

A fundamental civility of our jurisprudence subordinates financial obligations to claims of life and liberty. Thus, without the citation of authority, our system does not permit incarceration to satisfy a debt. Nor does it permit the sale of human beings as chattels. We would never require, for example, the extraction of a pint of blood from a person for sale in satisfaction of a money judgment.

Likewise an exemption law that permits a debtor to retain his claim to recompense himself for personal injury avoids a creditor's stripping him of his means of possibly becoming whole when injured in tort. The law will, within limits, allow for attachment of his property for the satisfaction of debts, and for that matter lawsuits that go with that property, but it will not allow for attachment of his person for such purpose. Under these principles we can expect that a car

which is burned in an electrical fire will be subject to attachment, as would be any claim against the insurance company for the fire loss. On the other hand, a person is not a chattel subject to attachment in satisfaction of a debt, and so, too, a lawsuit seeking to recompense him for damage to his person is likewise protected from attachment.

90 B.R. at 148.

The money that Ms. Rosemann received from the airline was to compensate her for an alleged injury. It thus was, "[m]oney payable in the event of ... injury ...." § 11–504(b)(2). The airline agreed to pay the money as part of a "compromise" in which Ms. Rosemann agreed not to pursue further her lawsuit against the airline. The settlement funds held by the law firm, thus, fall squarely within the personal injury exemption.

In the face of the plain language of the statute and its clear applicability to the facts of the present case, Mr. Rosemann nonetheless urges us to hold that the money received by Ms. Rosemann in compensation for her injury is not exempt because the underlying judgments on which he seeks to execute represent child support arrearages. He bluntly asks us to carve-out an exception to the exemption statute solely on the ground of general public policy, based largely on a demonstrable track record in recent years of the Legislature cracking down on dead-beat parents through statutory changes (unrelated to the statute in this case) making it easier to collect such arrearages or put pressure on the debtor to pay up. The law firm retorts that, notwithstanding the Legislature's apparent policy of enhancing the enforceability of child support awards, the language of the particular statute here is plain and does not include an exception for child support obligations. As the argument goes, had the Legislature intended to bring § 11–504(b)(2) within the initiative to enhance collection of child support arrearages, it knew how to do so and chose not to.

It is well established that, in Maryland, a parent has a duty to support his or her children. *See, e.g., Goldberg*

*v. Miller*, 371 Md. 591, 603, 810 A.2d 947, 954 (2002) ("This Court has long recognized the parents' obligation to support their minor children. This obligation imposes a duty on the parent to provide support and confers a right on children to receive it.") (internal citations omitted). This duty is confirmed in the common law, *see id.*, and in our statutes. *See* Md.Code Ann., Fam. Law (1984, 2006 Repl. Vol. & Supp.2009) § 5–203 (Parents are "jointly and severally responsible for the child's support, care, nurture, welfare, and education...."). The duty is so important that a parent may not "bargain away" or waive his/her minor child's right to receive support. *See Stambaugh v. Child Support Enforcement Admin.*, 323 Md. 106, 111–12, 591 A.2d 501, 503–504 (1991) (holding that an agreement between a mother and father to waive payment of child support and arrearages in exchange for father's consent to the adoption of the minor children by the mother's husband was invalid because it violated public policy).

Indeed, the Citizens of Maryland and the General Assembly have taken several steps to ensure that non-supporting parents honor their obligations. For example, the State Constitution provides that a person may be imprisoned for non-payment of child or spousal support obligations. *See* Md. Const. art. III, § 38 (stating that "[n]o person shall be imprisoned for a debt, but a valid decree of a court of competent jurisdiction or agreement approved by decree of said court for the support of a spouse or dependent children, or for alimony ... shall not constitute a debt within the meaning of this section."); Md. Rule 15–207(e) (providing procedures for imprisonment upon non-payment of child or spousal support obligation); *Middleton v. Middleton*, 329 Md. 627, 639, 620 A.2d 1363, 1369 (1993) (holding that "since a parent's child support obligation is not a debt within the prohibition of § 38, the obligation of the defaulting parent may be enforced by means of the court's contempt power, including imprisonment, pending the purging of the default."). The General Assembly authorized the Child Support Enforcement Administration (the "Administration"),[6] subject to procedural requirements, to request the Motor Vehicle Administration (the "MVA") to

---

6. The General Assembly mandated that the Administration shall:

suspend the driver's license of any obligor who has failed to make child support payments. Fam. Law § 10–119(b); *see also* Md.Code Ann. Transp. (1977, 2009 Repl. Vol.) § 16–203 (providing that if the Administration notifies the MVA that "an obligor is 60 days or more out of compliance with the most recent order of the court in making child support payments, the [MVA] shall (1) suspend an obligor's license of privilege to drive in this State ....."). The Administration also may request a licensing authority to suspend the occupational license of an obligor who is in arrears with respect to child support payments. Fam. Law § 10–119.3. In addition, §§ 10–120 through 10–138 authorize the Administration, under certain circumstances, to require an employer to "deduct support payments from the earnings of an obligor." § 10–120(b). These statutes effectuate a federal mandate to create procedures "to withhold, suspend, or restrict the use of driver's licenses, professional and occupational licenses, and recreational and sporting licenses of individuals owing overdue support...." 42 U.S.C.S. § 666(a)(16) (LexisNexis 2009).

Mr. Rosemann argues that these various statutory methods for enforcing a child support obligation demonstrate generally that an obligee's right to receive support trumps an obligor's right to receive any funds in compensation for a personal

(1) coordinate a statewide program for support enforcement;
(2) maintain a central registry of records on absent parents as required under § 12–105 of this article;
(3) locate absent parents;
(4) determine the ability of an absent parent to pay child support;
(5) accept assignment of right, title, or interest in child support made under § 5–312(b)(2) of the Human Services Article;
(6) in any case in which an assignment is made under § 5–312(b)(2) of the Human Services Article, prosecute and maintain any legal or equitable action available to establish each absent parent's obligation to pay child support;
(7) cooperate with other states in establishing and enforcing child support obligations;
(8) collect and disburse support payments through the State disbursement unit established under § 10–108.7 of this subtitle; and
(9) use established legal processes to enforce court orders to pay support.
Fam. Law § 10–108(a).

injury. We are compelled to disagree. Although the many statutes enacted by the Legislature indeed demonstrate a strong public policy in favor of enforcing child support awards, that does not authorize this Court, when the clear application of the presently considered statute supplies a result that is adverse to that policy, to fashion from whole judicial cloth an exception to the statute. We are not a super-legislature.

We acknowledge, as we must, that we have held, under the facts and circumstances of other cases and statutes, that statutes exempting certain property from execution were found inapplicable where the underlying debt was for spousal support arrearages. In *United States v. Williams*, 279 Md. 673, 370 A.2d 1134 (1977), a former wife of a retired military officer filed a writ of attachment with the United States to effect a collection of arrearages of alimony. The exemption at issue provided that the following amount of wages were exempt from attachment:

(1) [T]he greater of:

(i) The product of $120 multiplied by the number of weeks in which the wages due are earned; or

(ii) 75 percent of the wages due; . . . .

*Id.* at 676 n. 3, 370 A.2d at 1136 (quoting Md.Code (1975) Commercial Law Article § 16–602). The United States argued that the retirement pay did not constitute wages and, even if it did, the amount that Mrs. Williams sought was in excess of the amount allowed under the exemption. We held first that federal military retirement pay constituted wages for the purposes of the statute.[7] *Id.* at 678, 370 A.2d at 1137. We held further that "the exemptions from attachment provided by § 15–602(b)(1)(i) and (ii) are inapplicable, because the underlying obligation is for intra-familial support and the very purpose of the statutory exemptions is to protect a family from being deprived of all support by attachment proceedings brought by an outsider." *Id.* In *Williams*, we drew an

---

7. Section 15–601 provided, at the time we decided *Williams*, that wages "means all monetary remuneration paid to any employee for his employment." 279 Md. at 676 n. 3, 370 A.2d at 1137.

analogy to *Safe Deposit & Trust Co. of Balt. v. Robertson*, 192 Md. 653, 65 A.2d 292 (1949), where we permitted the attachment of income from a spendthrift trust to satisfy alimony arrearages, notwithstanding that a typical creditor would not be permitted to reach the funds. *Williams*, 279 Md. at 678–79, 370 A.2d at 1137 (citing *Safe Deposit*, 192 Md. at 662–63, 65 A.2d at 296). In *Safe Deposit*, our decision "rest[ed] . . . upon grounds of public policy. . . ." 192 Md. at 663, 65 A.2d at 296. We explained the rationale for that as,

> [t]he reason for the rejection of the common law rule, that a condition restraining alienation by the beneficiary is repugnant to the nature of the estate granted, was simply that persons extending credit to the beneficiary on a voluntary basis are chargeable with notice of the conditions set forth in the instrument. This reasoning is inapplicable to a claim for alimony which, in Maryland at least, is an award made by the court for food, clothing, habitation and other necessaries for the maintenance of the wife. The obligation continues during the joint lives of the parties, and is a duty, not a debt. . . . We think the rule that gives legal effect to spendthrift provisions as against contract creditors should not be extended to claims for support or alimony. In such situations the wife is a favored suitor, and her claim is based upon the strongest grounds of public policy.

*Id.* at 662–63, 65 A.2d at 296 (internal citations and quotation marks omitted).

In *Blum v. Blum*, 295 Md. 135, 141–42, 453 A.2d 824, 828 (1983), we extended the holding of *Williams* to an obligation to pay contractual spousal support. We drew no distinction between a contractual obligation to pay spousal support and alimony, holding that "the obligation to pay contractual spousal support, like the obligation to pay alimony, is not a debt, but rather a duty to provide intra-familial support . . ." *Id.* Thus, the same statute we interpreted in *Williams* did "not apply to a wage lien for contractual spousal support. . . ." *Id.* at 142, 453 A.2d at 828.

In *Pope v. Pope*, 283 Md. 531, 390 A.2d 1128 (1978), we interpreted a provision of the Unemployment Insurance Law

that exempted unemployment benefits from execution. The statute at issue in *Pope* provided that " 'rights to [unemployment] benefits shall be exempt from levy, execution, attachment, or any other remedy whatsoever provided for the collection of debt. . . .' " *Id.* at 534, 390 A.2d at 1130 (quoting Md.Code (1957, 1969 Repl. Vol.), Art. 16, § 16(c)). In *Pope,* the former wife of a recipient of unemployment benefits sought to enforce the provisions of a decree under which her husband was to pay her permanent alimony of $20 per week. *Id.* at 532–33, 390 A.2d at 1129. The Circuit Court ordered a lien on the former husband's unemployment benefits. *Id.* The Employment Security Administration opposed imposition of the lien, arguing that a lien on the benefits would violate the Unemployment Insurance Law. *Id.* at 533, 390 A.2d at 1129–30. Applying the holding in *Williams,* we held that the benefits were not exempt and that the statute did "not prohibit a lien for alimony. . . ." *Id.* at 535, 390 A.2d at 1129–30. We acknowledged that our holding, as in *Williams,* "fail[ed] to adhere to the literal language of the statute," *id.* at 536, 390 A.2d at 1131, but determined nonetheless that the purpose of the unemployment statute mandated our conclusion because "the very purpose of invalidating assignments of unemployment benefits and of exempting them from attachment . . . is 'to lighten [the] burden which now so often falls with crushing force upon the unemployed worker *and his family.*' " *Id.* (quoting Md.Code (1957, 1969 Repl. Vol.), Art. 95 A, § 16(c)) (emphasis in original). In reaching this conclusion, we explained why contravention of the plain language of the statute was necessary to effectuate the legislative intent:

> The courts which accept the principle we adopted in *Williams* are simply recognizing that the legislative purpose underlying such statutes is the protection of the various types of benefits involved from the claims of creditors—not from the claim of a former wife for alimony, which often, as in Maryland, is not considered a debt.

*Id.* at 537, 390 A.2d at 1132.

Mr. Rosemann argues that these cases establish that statutes and constitutional provisions exempting specific property

from legal process have been construed judicially to be inapplicable against a claim for child support or alimony. We disagree. The cases establish that statutes exempting *wages and unemployment benefits* from execution on a judgment have been construed to be inapplicable as against a claim for familial support. As the intermediate appellate court, in its unreported opinion in the present case, summarized aptly our prior decisions, "although some portion of the family's support should be protected from creditors, no part of the wages that provide support should be protected from the family itself." The rationale underlying that construction is that the purpose of the wage and benefit exemptions "is to protect a family from being deprived of all support by attachment proceedings brought by an outsider." *Williams,* 279 Md. at 678, 370 A.2d at 1137. The exemption at issue in the present case, the personal injury exemption, by contrast, is to make the injured person whole. Unlike wages, a personal injury award is not meant to support directly the injured party's family; it is meant primarily to pay medical bills and compensate for loss of future earnings and pain and suffering. Furthermore, our holding in *Safe Deposit* is inapplicable here because the trust funds were intended to provide income to the beneficiary, not, as is the case underlying the personal injury exemption, to make the person whole when injured in tort.

The Legislature has considered and amended the exemption statute many times since it was codified as § 11–504 of the Courts and Judicial Proceedings Article. *See* Laws of Md., 1977, Ch. 356; Laws of Md., 1980, Ch. 546; Laws of Md., 1981, Ch. 765; Laws of Md., 1982, Ch. 703; Laws of Md., 1983, Chs. 175 and 554; Laws of Md., 1984, Ch. 255; Laws of Md., 1988, Ch. 613; Laws of Md., 1989, Ch. 549; Laws of Md., 1998, Ch. 375; Laws of Md., 2003, Ch. 21, § 1; Laws of Md., 2004, Ch. 463; Laws of Md., 2007, Ch. 238. Pertinent to the present case, in 2007, the Legislature considered § 11–504 in connection with child support and alimony and amended the statute to exempt from execution money paid or payable for child support or alimony. S.B. 712, Laws of Md., 2007, Ch. 238. The amendment is codified at § 11–504(b)(6) and (7). In

enacting that amendment, the Legislature recognized the impact this section may have on domestic support matters, yet did not create an exception to the personal injury monies exemption with regard to execution on a judgment for child support arrearages. We may not create judicially an exemption to the statute that the Legislature has not seen fit to impose. As demonstrated by the multiple amendments to § 11–504, the Legislature had ample opportunities to enact an exception permitting a judgment creditor to execute on exempted property where the judgment is for domestic support arrearages, but it has not done so.

■■ Mr. Rosemann asserts that federal policy in favor of enforcing child support obligations also mandates that we conclude that the funds are not exempt from execution in the present case. Pointing to the mandate established in 42 U.S.C. § 666(a)(16) requiring States to establish procedures to suspend or restrict licenses, he argues that federal law requires states to give support collection priority over any other legal process under state law. He relies on § 666(b)(7) in support of this proposition, which indeed provides that "[s]upport collection under this subsection must be given priority over any other legal process under State law against the same income." This does not convince us that his argument must carry the day, however, because "income" is defined as "any periodic form of payment due to an individual, regardless of source, including wages, salaries, commissions, bonuses, worker's compensation, disability, payments pursuant to a pension or retirement program, and interest." *Id.* § 666(b)(8). The personal injury settlement funds are not a form of periodic payment due to Ms. Rosemann and do not fit within any of the enumerated types of payments. Thus, we conclude that federal law does not require that support collection have a higher priority than Ms. Rosemann's right to exempt her personal injury settlement proceeds from execution.

## IV. Conclusion

■■ Although anyone (with the possible exception of the non-supporting parent) can sympathize with Mr. Rosem-

ann's and his children's situation, in accordance with the well-settled rules of statutory construction, we cannot " 'judicially place in the statute language which is not there' in order to avoid a harsh result." *Simpson v. Moore*, 323 Md. 215, 225, 592 A.2d 1090, 1094 (1991) (quoting *Cotham v. Bd. of County Comm'rs*, 260 Md. 556, 565, 273 A.2d 115, 120 (1971)). Even where we have determined that an omission from a statute was inadvertent, we have declined to supply words to reach a desired result. *See Birmingham v. Bd. of Pub. Works*, 249 Md. 443, 449, 239 A.2d 923, 926 (1968) ("Nor have we the power to correct an omission in the language of a statute, even [ ]though the omission was the obvious result of inadvertence."); *Rogan v. B & O R. Co.*, 188 Md. 44, 54, 52 A.2d 261, 266 (1947) ("Even though a certain provision, which has been omitted from a statute, appears to be within the obvious purpose or plan of the statute, and to have been omitted merely by inadvertence, nevertheless, the court is not at liberty to add to the language of the law; and the court must hold that the Legislature intended to omit the provision, however improbable that may appear in connection with the general policy of the statute."). As Justice Brande is noted in *Iselin v. United States*, 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566 (1926), "[t]o supply omissions transcends the judicial function." If the situation brought to light by this case is an oversight, it is a matter for the Legislature to correct. Thus, we hold that the money received by the Judgment Debtor is exempt from execution here pursuant to § 11–504(b)(2).

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**